**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0604n.06

**No. 08-4532**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 25, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| SHARON JOHNSON, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| CLEVELAND CITY SCHOOL DISTRICT, et al., | ) | |
| | ) | O P I N I O N |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: McKEAGUE and WHITE, Circuit Judges; MARBLEY, District Judge.[*]

**McKeague, Circuit Judge.** ShaRon Johnson, was an employee of the Cleveland City School District (the "School District"). She developed cervical myelopathy, a degenerative condition that affects the nervous system. The School District looked for positions that Johnson could fill, and the principal at Adlai Stevenson Elementary School created an academic interventionist position to accommodate her disability. When Johnson transferred to Robert Jamison Elementary School, the School District recorded her position at Jamison as an allocated teacher. Several years later, when School District administrators discovered Johnson was not serving in her allocated role, they insisted she return to the classroom. Johnson indicated that a classroom position

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

would violate the accommodations necessary for her disability. When the School District insisted, Johnson filed a discrimination charge, and, in May 2007, filed a complaint in district court alleging a violation of the Americans with Disabilities Act ("ADA"). Johnson and the School District continued to communicate, until, in August 2007, the School District terminated Johnson. Johnson filed a second discrimination charge after she was terminated. The district court granted summary judgment to the School District, and Johnson now appeals. For the reasons given below, we affirm in part and reverse in part.

**I.**

The events giving rise to this litigation began when Johnson was injured in a motor vehicle accident in 1988. During a myelogram to diagnose the source of lingering pain, she received an injury to her spinal cord. She was later diagnosed as having cervical myelopathy. The symptoms of cervical myelopathy resemble those of a stroke: if Johnson overexerts herself, her breathing becomes labored, she feels faint, her "arm will curl up, [her] legs will become extremely weak and [her] muscles will become extremely fatigued."

In 2002, a principal complained to the School District that Johnson was on her roster but that Johnson was not working at the principal's school. The School District's human resources department arranged a meeting with Johnson. After the meeting, Johnson was sent to Dr. Patrick Bray for an evaluation of her disability. Dr. Bray sent the School District his assessment of Johnson's disability. Dr. Bray informed the School District that he believed Johnson had a disability as defined under the ADA. He listed several recommended accommodations:

No standing for more than one hour per day.

> No continuous speaking.
> Alternate sitting, standing, and walking.
> Minimal stairs.
> Use of ambulatory aids such as a cane, and under extreme circumstances, an electrical scooter as needed [sic].

(Johnson Dep., Ex. 5.)

The School District spent several months looking for a position in the district that could provide the accommodations listed. Throughout the process, Johnson continually sought an assignment. In 2004, Adrian Thompson, the School District's chief legal counsel, contacted Susan Hawthorne-Clay, the principal at Adlai Stevenson. Hawthorne-Clay gave Johnson a position working with students in small groups. Johnson also worked on programming, professional development for teachers, and writing grants. Hawthorne-Clay gave Johnson's created position the title of academic interventionist. In 2005, Hawthorne-Clay became the principal at Robert Jamison Elementary School. Johnson moved to Jamison with Hawthorne-Clay. Unlike at Adlai Stevenson, the School District allocated Johnson to fill a teacher position at Jamison. Though Johnson was allocated as a teacher at Jamison, she continued to serve in the same created position she had at Adlai Stevenson.

In 2006, Sharon McDonald became the deputy chief of preK-8 in the School District. As part of her duties, she visited all the schools in the district. On her visit to Jamison, McDonald met Johnson and became concerned about Johnson's position at the school. McDonald asked Johnson what she did, and McDonald was dissatisfied with Johnson's answer. McDonald sought out

Johnson's principal, and she demanded to know what role Johnson filled.[1] McDonald contacted Clinton Faulkner, the deputy chief of human resources at the School District, and Donna Bowen, the executive director of human resources. Bowen indicated that Johnson was an allocated teacher at Jamison and that a permanent substitute teacher was teaching Johnson's classes. Faulkner said he would contact Dr. Bray to find out about Johnson's accommodations.

On September 2, 2006, McDonald called Hawthorne-Clay and told her to put Johnson back in the classroom. After several rounds of communication, Johnson was assigned to an eighth grade classroom at Jamison. Johnson's new classroom was on the second floor. The elevator to the second floor was broken. The climate control was also broken. Johnson felt she needed to walk downstairs frequently to cool off. Miss Porter, a permanent substitute teacher, was temporarily assigned to the same classroom to assist Johnson. Johnson stated that, after she received the assignment, she requested a lower level classroom from "someone."

McDonald visited Jamison again on September 8, 2006 and sought out Johnson's classroom. McDonald was accompanied by Assistant Superintendent Robert Moore, an assistant principal, and possibly a security officer. They observed that another teacher was teaching in the classroom, while Johnson sat with a small group of students. McDonald had Moore pull Johnson out into the hallway.

---

[1]Hawthorne-Clay stated that McDonald found her at a family funeral and demanded to know why Johnson was not in a classroom. McDonald denied this occurred.

When pressed on why she was not teaching, Johnson replied that she was sick.[2] She then left for the day. Johnson did not return to the school that semester.[3]

On September 12, 2006, Johnson filed a charge with the Ohio Civil Rights Commission ("OCRC"). She alleged that "the ADA classroom restrictions that had been established . . . which allowed me to teach small groups of children (8) would no longer be honored by the new administration." On December 14, 2006, the OCRC issued a no probable cause finding on Johnson's charge of discrimination. It found that Johnson was not disabled because she had "failed to articulate consistently how her disability substantially limited her major life activities." It went on to find that even if Johnson was disabled, she was not denied a reasonable accommodation because Johnson's "restrictions do not refer to class size or the need for a low stress environment." Johnson filed a motion to reconsider, and the OCRC denied the claim again on January 11, 2007.

After the OCRC no probable cause determination, Faulkner sent Johnson a letter telling her to return to work on January 8, 2007. Johnson did so. She was assigned to the same second floor classroom, which she found "hot, humid, and . . . sauna like." After asking the custodian to fix the problem, she notified the school office and left. She emailed Faulkner, McDonald, and others to inform them of the climate control problem in the classroom. She did not return to work the next day, and only worked five more days in the Spring 2007 semester. Johnson did not teach a full class on any of these days.

---

[2]Johnson recalls McDonald becoming increasingly loud during this encounter, and Johnson was concerned about the presence of a security officer.

[3]Johnson continued receiving pay throughout the semester because of her accrued sick time.

Johnson asked to update her disability documentation, and she received permission for a fit-for-duty examination. Three doctors examined Johnson. All three found she had a disability, and all three offered similar proposed accommodations. These accommodations largely followed the recommendations from Dr. Bray in 2002, however, two accommodations were added: Johnson was not to work in extreme temperatures, and Johnson "should not be required to verbally control resistant behavior in students that persists after an initial warning."

Communications between Johnson and the School District continued. Johnson also received her counselor certification and informed the district that she could work as a counselor. In April 2007, Johnson attended a job fair at John Carroll University. She went to the School District presentation. According to Dr. Cordelia Harris, the director of human resources, Johnson only introduced herself. According to Johnson, Dr. Harris told her about School District's shortage of counselors and told her to call her office about counselor positions. Johnson stated that she called the office and was told to fill out an application online. Johnson filled out a teacher application online rather than a counselor application because she could not find the counselor application.[4] She indicated on the application that she wanted to be a counselor.

On May 15, 2007, the School District called a meeting with Johnson. At the meeting, Johnson provided the letters from her doctors and discussed her requested accommodations. School District officials noted their concern with the restriction on disciplining students. Johnson renewed

---

[4]Guidance counselor positions are only posted when they are available. All guidance counselor positions require an interview process that only occurs when there is an opening.

her request for a small class size, but was told that it was not a reasonable accommodation. Johnson also requested a counseling position. No action was ultimately taken at the meeting.

On May 31, 2007, Johnson filed a complaint in the United States District Court for the Northern District of Ohio alleging a violation of the Americans with Disabilities Act ("ADA") as well as Ohio's civil rights statute, breach of contract, and intentional infliction of emotional distress.

In July 2007, the School District sent Johnson a letter stating that it would be difficult to accommodate her request to avoid disciplining resistive students but that it would continue looking for a position for her. Johnson immediately replied, contesting the problems raised by the School District.

On August 17, 2007, Bowen contacted Johnson with three job openings for the coming year. All three positions involved teaching a full class of twenty to thirty students. Johnson indicated that the positions did not satisfy her ADA requirements. Bowen nevertheless asked Johnson to choose a position. Johnson selected a position at Gracemont Elementary School.

Bowen called Johnson again later that day and asked her to get medical clearance for the position at Gracemont.[5] Bowen later stated that Johnson refused, while Johnson asserted that she said nothing. Johnson stated that Bowen told her she would call Johnson back with further information. Bowen never called Johnson again, and, four days after that phone call, Johnson

---

[5]The School District Leave of Absence Policy requires an employee returning from leave to provide a "physician's release to work statement (if applicable)." It does not indicate when the requirement is applicable. Bowen indicates that she contacted a lawyer after her first call to Johnson. Darlene Bushley, who was also in the room for the phone calls to Johnson, does not remember Bowen speaking to legal counsel.

received a letter terminating her position with the School District. The letter indicated that Johnson had refused the position at Gracemont and that the School District was "unable to accommodate the restriction [Johnson] claim[ed] to have with respect to [Johnson's] inability to discipline students, which is an essential function of positions that involve working with students in a teaching, counseling, or administrative capacity."

After her termination, Johnson amended her complaint to include an allegation that she was terminated in retaliation for her OCRC charge. On August 30, 2007, Johnson also filed another OCRC charge. In this charge, she alleged that her "employment was terminated in retaliation of my filing of the two prior actions against the Cleveland Municipal School District." In addition to checking the box for retaliation, she checked the box for discrimination because of her disability and wrote next to it "revoked ADA accommodations." The EEOC issued a right to sue letter on March 18, 2008, and the OCRC issued its no probable cause determination on May 22, 2008.

The district court meanwhile ruled on the School District's motion to dismiss Johnson's breach of contract claim. Because Johnson did not follow the grievance process, the district court found it lacked subject matter jurisdiction over the claim. Johnson then filed a motion to amend her complaint. She sought to remove the breach of contract claim from the complaint, add a reference to the second OCRC charge, and add new facts from discovery. The district court denied the motion to amend without explanation.

The School District filed a motion for summary judgment, which the district court granted. The district court found that Johnson had not shown that the School District had failed to accommodate her in any of the ways provided in Dr. Bray's 2002 list of accommodations prior to

January 11, 2007. It further found that Johnson had failed to exhaust any alleged failures after January 11, 2007, because she had not filed an OCRC charge with regard to any such failures. It also found that there was no evidence of causation to support a retaliation claim. Finally, the district court dismissed the state law claims because the federal claim had been dismissed.

## II.

### A. Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At the summary judgment stage, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

### B. Exhaustion

A plaintiff must file a charge with the EEOC and receive a right-to-sue letter before commencing litigation.[6] *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f). This requirement serves to trigger an investigation into the alleged discrimination as well as conciliatory procedures. *See*

---

[6]The EEOC may enter workshare agreements with state civil rights agencies allowing the state agencies to receive and resolve charges of discrimination for the EEOC. 29 C.F.R. § 1626.10. The OCRC has such an agreement with the EEOC.

*Cleveland Branch, N.A.A.C.P. v. City of Parma,* 263 F.3d 513, 534 (6th Cir. 2001). A charge is sufficient if it serves to "identify the parties[] and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

A district court's jurisdiction is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). Therefore, a plaintiff may bring suit on an uncharged claim if it was reasonably within the scope of the charge filed. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."). We also consider an uncharged claim exhausted if the relevant agency discovers evidence of the discrimination underlying the uncharged claim during their investigation into the plaintiff's charge. *Id.* Where a district court dismisses for lack of subject matter jurisdiction, the Sixth Circuit reviews legal questions de novo and factual questions for clear error. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998).

The Sixth Circuit interprets the scope of a charge liberally where the plaintiff was not assisted by counsel in drafting the charge. "Liberal construction is not necessary where the claimant is aided by counsel in preparing his charge." *Ang*, 932 F.2d at 546. However, that "does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel." *Cleveland*

*Branch, N.A.A.C.P.*, 263 F.3d at 536. According to Johnson's attorney, Johnson was not assisted by counsel in the preparation of her OCRC charges of discrimination.[7]

The district court held that the first charge exhausted Johnson's claims with regard to accommodations prior to January 11, 2007.[8] It also held that Johnson's second OCRC charge only included a claim for retaliatory termination, though the court did not specify what other claims it considered unexhausted. Johnson claims on appeal that the second charge also exhausted a failure-to-accommodate claim, a claim that the School District retaliated against her by denying her accommodations, and a discriminatory discharge claim. We address each claim in turn.

### 1. Failure to Accommodate

A failure to accommodate is a form of discrimination on the basis of disability. 42 U.S.C. § 12112(b)(5)(A). On Johnson's second charge of discrimination, she checked the box indicating that she was discriminated against because of her disability, and she wrote next to that box "Revoked ADA Accommodations."[9] Johnson is not, therefore, attempting to include a claim that was not marked on the charge of discrimination. *Compare Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (looking to facts included in the charge because the plaintiff had not checked the box

---

[7]Johnson concedes that she was represented by counsel at the time of the charge, but in the reply brief and at oral argument, her attorney states that Johnson was not assisted in filing the charge.

[8]January 11, 2007 was the date of the OCRC's final determination on Johnson's first charge of discrimination.

[9]Johnson, however, did not check the box marked "Reasonable Accommodation" under "Type of Discrimination." This does not alter the clear indication of an accommodation claim provided elsewhere in the discrimination charge.

indicating his claim). Instead, Johnson's OCRC charge plainly noted a claim of disability discrimination based on the provision of accommodations. Further, this was sufficient to initiate the investigatory process, as the OCRC's Letter of Determination twice made reference to an accommodation claim. We therefore find that Johnson exhausted this claim.

## 2. Retaliatory Denial of Accommodations

Johnson also contends that the district court improperly found she had not exhausted a claim of retaliatory denial of accommodations. This claim was not directly included in either of Johnson's charges of discrimination. In her first charge, Johnson did not indicate there had been any retaliation. In her second charge, Johnson checked the box for retaliation but wrote next to it "Employment Termination 8/22/07." In the fact section of the charge, she only referred to retaliation in her termination. The question then is whether the claim would reasonably grow out of the scope of the investigation of either charge.

In making that determination we look to whether the "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim." *Davis*, 157 F.3d at 463. As a rule, we have found that retaliation does not reasonably grow out of a substantive claim of discrimination if the retaliation occurred before the EEOC charge was filed. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *Ang*, 932 F.2d at 547. However, where the charge of discrimination clearly alleges facts that would give rise to a retaliation claim, that retaliation claim is exhausted even if the retaliation occurred before the charge was filed. *Duggins v. Steak N' Shake, Inc.*, 195 F.3d 828, 832-33 (6th Cir. 1999); *see also Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527-28 (6th Cir. 2005).

Johnson's second charge clearly alleged facts that could support a retaliation claim. Her second charge noted that she engaged in protected activity by filing a previous charge with the OCRC and by filing a lawsuit against the School District. The charge also alleged that the School District revoked Johnson's accommodations. The OCRC appeared to investigate this claim, as it found that the facts did not raise an inference that Johnson's "disability or participation in a protected activity was the likely motivation for her alleged denial of an accommodation or termination." (Letter of Determination, Ex. 197, Ex. 21). A claim of retaliatory denial of accommodations reasonably arose out of these allegations, and we therefore find that Johnson exhausted this claim as well.

### 3. Discriminatory Discharge

Johnson also did not refer to a claim of discriminatory discharge in either charge of discrimination. However, her second charge alleged that she was discriminated against because of her disability and that she was terminated. We therefore also find that Johnson exhausted her discriminatory discharge claim. *Compare Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (claim of gender discrimination reasonably grew out of an allegation of retaliation). Indeed, the OCRC described her second charge as including claims that "she was denied a reasonable accommodation and *subsequently terminated due to her disability* and in retaliation for engaging in a protected activity." (Letter of Determination, Ex. 197, Ex. 21) (emphasis added).

### 4. Conclusion

Where the district court improperly limited the claims the plaintiff has exhausted, the appropriate remedy is to reverse and remand to the district court for further proceedings. *Dixon*, 392

F.3d at 219; *Duggins*, 195 F.3d at 833. As the district court erred in limiting Johnson's claims, we reverse and remand for further consideration by the district court of Johnson's claims of failure to accommodate, retaliatory denial of accommodations, and discriminatory discharge.

**C. Failure to Accommodate**

The ADA prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. § 12112(a) (2008). The ADA defines discrimination to include, among other things, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A).

The plaintiff has the burden of establishing she is disabled as defined in the ADA. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). The plaintiff also "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Id.* at 870. The burden of proof then shifts to the defendant to show that the accommodation would be an undue hardship. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008).

In order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's known physical limitations. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008); *see also Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005). A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities." *Id.* § 12111(9). The ADA does not

require the employer to create a new position for the plaintiff as an accommodation. *Kleiber*, 485

F.3d at 869.

Johnson's requested accommodations can be divided into three groups: the accommodations

requested in her first OCRC charge of discrimination, the accommodations she contends the School

District failed to provide her, and the accommodations in Dr. Bray's 2002 letter to the School

District. We will examine each group in turn.

First, in the OCRC charge itself, Johnson requested "the ADA classroom restrictions that had

been established . . . which allowed me to teach small groups of children (8)." That position did not

exist in the School District. Hawthorne-Clay created it at Adlai Stevenson for Johnson.[10] According

to the School District records, Johnson was an allocated teacher at Jamison. The School District

had no obligation to create an academic interventionist position at Jamison in order to accommodate

Johnson. *See Kleiber*, 485 F.3d at 869.

Second, during litigation, Johnson has argued that the School District failed to provide her

the following accommodations: a return to the academic interventionist position, a position teaching

a small group of students, a climate-controlled classroom, and a position as a school counselor. As

discussed above, the academic interventionist position was not a reasonable accommodation.

Despite her contentions, there is no indication that her disability required the other accommodations

---

[10]Johnson contends that the position does exist and is waiting to be filled; however, the portion of the record that Johnson cites does not contain any reference to an academic interventionist. Instead, it lists several open teacher positions including one for a literacy teacher.

or that she had requested the accommodations prior to January 11, 2007.[11] Johnson also contends that, as an accommodation, she requested a substitute teacher to assist her transition into the classroom. The substitute was provided under the union contract and not as an accommodation of Johnson's disability. Moreover, the substitute was still in the classroom when Johnson left the teaching position for the semester. Accordingly, we find that the district court did not err in finding the School District did not fail to accommodate Johnson with regard to these accommodations. *See id.* at 870.

Third, Johnson also originally had provided the School District with a set of requested accommodations in Dr. Bray's 2002 letter. Those accommodations included restricted standing, sitting, walking, and speaking, as well as the use of ambulatory aids and minimal stairs. There is no dispute that Johnson requested these accommodations. However, Johnson has not shown that the teaching position in the second floor classroom failed to provide these accommodations. The district court held that Johnson failed to produce evidence that "she was required, by virtue of her job requirements, to engage in more than 'minimal stairs' climbing." Indeed, Dr. Bray testified in his deposition that "going up a flight of stairs . . . and then staying there for, you know, an hour, or two, or three, and then going down the stairs at the end of the shift . . . that would be ok." (Bray Dep. at 57.) While Johnson may have preferred another position to accommodate her disability, the School District satisfied its obligations under the ADA by providing a position that complied with Johnson's

_____

[11]Several of these accommodations were requested after January 11, 2007. The district court did not consider them in its original opinion because of its finding on exhaustion. As we have held these claims were exhausted, the district court should consider these accommodations on remand.

requested accommodations. *See Talley*, 542 F.3d at 1108; *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004).

The School District therefore provided Johnson with a reasonable accommodation in response to the only accommodation requests before January 11, 2007 that were based on Johnson's disability. Accordingly, we hold that the district court did not err in granting summary judgment to the School District on Johnson's failure to accommodate claim based on events before January 11, 2007.

## D. Retaliatory Termination

Johnson alleged that the School District terminated her in retaliation for filing a charge with the EEOC and for filing this lawsuit against the School District. A retaliation claim under the ADA uses the same framework as a retaliation claim under Title VII. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). A prima facie case of retaliation requires a plaintiff to demonstrate that

> (1) she engaged in activity protected by [the ADA]; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.

*Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). The plaintiff must then demonstrate that the legitimate reason is pretextual. *Id.*

The district court found that there was no causal connection between Johnson's protected activity and her termination. We agree. In order to establish causation, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). In rare circumstances, temporal proximity may be enough to establish an inference of causation. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* The burden of establishing causation is not onerous, but it does rest on the plaintiff. *Nguyen*, 229 F.3d at 563.

Over a year passed between Johnson's first OCRC charge and her termination, and three months had passed between the filing of this lawsuit and her termination. Standing alone, neither act is sufficiently close in time to Johnson's termination to warrant an inference of causation. *See Mickey*, 516 F.3d at 525. As there is no other evidence that links her termination to her OCRC charge or to this lawsuit, Johnson has not established a causal connection for her prima facie case.

**E. Denial of a Motion to Amend the Complaint**

A denial of a motion to amend is reviewed for an abuse of discretion. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). A denial of a request to amend without explanation is an abuse of discretion unless the reason is readily apparent. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006).

A court should consider the following factors in determining whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). When the motion is made late in litigation, there is an increased burden on the movant. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). "At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins*, 195 F.3d at 834 (collecting cases). If the Rule 16 deadline for amendments has already passed, then the movant must also show good cause for failure to seek to amend the complaint earlier. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Any error in denying a motion to amend is subject to harmless error analysis. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417 (6th Cir. 2000); *see also Garner v. Mo. Dept. of Mental Health*, 439 F.3d 958 (8th Cir. 2006); FED. R. CIV. P. 61. An error is harmless unless it affects the substantial rights of one of the parties. FED. R. CIV. P. 61.

Johnson moved to amend her complaint almost five months after the scheduling deadline for amendments. It was also seven weeks after the discovery deadline passed. She explained that she wanted to amend her complaint to remove a cause of action that the court had already dismissed; to, as a procedural matter, refer to the second right-to-sue letter in the complaint; and to add facts from discovery. (Motion to Amend Complaint, Docket No. 192.) The motion further noted that "[t]he Defendant would not be prejudice [sic] by clarification of the procedural issues and facts in this case." (*Id.* at ¶ 5.) These reasons explain why Johnson wanted to amend her complaint, but they do

not explain what good cause Johnson had for filing the motion so long after the deadline for amendments had passed. Given the increased burden on Johnson due to the timing of the motion, we cannot say that the district court abused its discretion in denying the motion. *See Miller*, 448 F.3d at 898-99.

Even if the district court abused its discretion in denying the motion to amend without explanation, any such error was harmless. *Leary*, 349 F.3d at 909. None of the reasons offered for amending the complaint affected Johnson's substantial rights. Facts gleaned from discovery are before the court regardless of whether they are included in the complaint. There is no need to amend a complaint to remove a dismissed claim, and the district court considered the retaliation claim raised in the second right-to-sue letter in its summary judgment opinion. While the amended complaint may indeed have provided for a clearer presentation, the denial of that amendment did not affect Johnson's substantial rights.

**III.**

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part. We **REMAND** for further proceedings consistent with this opinion.