NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0082n.06
Filed: February 1, 2007

No. 06-3279

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RAYMOND DENCZAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FORD MOTOR CO., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUHRHEINRICH, SUTTON and McKEAGUE, Circuit Judges.

PER CURIAM. Raymond Denczak contends that the district court erred in rejecting his claim under the Americans with Disabilities Act as a matter of law. We affirm.

I.

In 1972, Raymond Denczak began working for Ford Motor Company and, over the next 23 years, handled a variety of assembly-line positions.

In 1995, he had three operations to remove his colon and rectum and missed work for a year.

In 1996, when he returned to work, Denczak provided Ford with a letter of restriction from his personal physician, saying that he needed "frequent bathroom use." JA 340. Dr. Arlen Rollins,

Ford's plant physician, also performed a physical on Denczak and cleared him for work. Ford initially stationed Denczak at an assembly line position. But the assignment did not work for either party because it required Denczak to wait for a replacement before he could leave the assembly line to use the restroom and because waiting was not always feasible. Ford reassigned Denczak to a single-point job where he worked alone and could use the restroom whenever needed.

Later that year, Denczak underwent gallbladder surgery and missed work for five weeks. After Denczak recovered from the surgery, his physician recommended two additional work restrictions: "work at own pace" and "a 40-hour work week." JA 348. Dr. Rollins once again approved the restrictions and cleared him for work. Denczak returned to work and requested a "cleaner 2 position"—a temporary position that requires the employee to clean bathrooms, offices and the cafeteria and that is not governed strictly by seniority because it is reserved for employees who sustain workplace injuries. Ford instead assigned him to work a two-man press. He maintained the press position until 2003 despite his foreman's complaint that Denczak left to go to the bathroom too frequently.

In 2003, Ford placed Denczak in a "cleaner 3 position"—a permanent cleaning position that is governed strictly by seniority. Denczak remained in the position for a year and believed that it accommodated his restrictions. In March 2004, however, Ford "bumped" Denczak from the cleaner 3 position on seniority grounds when it reduced the number of cleaner 3 positions from six to three. The company reassigned Denczak to a single-point welding position. The new position required him

to work 40-hour weeks and afforded him the freedom to take bathroom breaks whenever necessary as long as he welded 225 parts per hour. Denczak, it turns out, could weld just 75–95 parts per hour.

On April 12, 2004, Denczak filed an application to retire on June 1. On April 20, his supervisor reported Denczak for not making enough parts and for talking on the job, prompting Ford to dock Denczak one hour's pay. Denczak filed a grievance but admitted that he could not meet the production target.

At roughly this same time, Denczak's supervisor informed Labor Relations that Denczak was satisfying just 30% of his target output. Labor Relations, in turn, sought the opinion of Dr. Rollins to determine whether 30% production was appropriate given Denczak's "work at own pace" restriction. Dr. Rollins responded that Denczak should be able to satisfy the full target output.

On April 22, Labor Relations ordered Denczak to meet with Dr. Rollins. At the meeting, Denczak expressed his disagreement with Dr. Rollins' assessment, claiming that he could not perform any production job at full-output level. *See* JA 409 ("I can't do any production jobs. The only job I can do in the plant is work as a No. 2 cleaner and clean offices."). Evidently persuaded by Denczak's assessment, Dr. Rollins issued a "no production work" restriction. JA 413. Because Ford did not have any non-production positions available, it placed Denczak in the "No Work Available" category. Denczak spent the remaining month and a half on disability leave, then retired on June 1.

06-3279
*Denczak v. Ford Motor Co.*

After his retirement, Denczak filed this lawsuit in federal court, claiming (1) that Ford violated his rights under the Americans with Disabilities Act by failing to accommodate his disability and (2) that Ford harassed him on account of his disability. D. Ct. Op. at 4. The district court rejected both claims as a matter of law, granting Ford's motion for summary judgment. On appeal, Denczak challenges only the district court's resolution of his failure-to-accommodate claim.

II.

To show that Ford violated his rights under the ADA, Denczak must establish that: "(1) he has a disability; (2) that he is otherwise qualified for the job; and (3) that [Ford] . . . refused to make a reasonable accommodation for his disability." *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997) (internal quotation marks omitted); *see also Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 724 (6th Cir. 2000). The parties, like the district court, agree that Denczak has a disability, so the question is whether he can satisfy the other two requirements.

To be "otherwise qualified for the job," *Ameritech*, 129 F.3d at 866 (internal quotation marks omitted), the employee must show that he can handle "the essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8); *see Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004). Courts consider "written job description[s]" and the "employer's judgment" in ascertaining these "essential functions." 42 U.S.C. § 12111(8).

The question at issue is whether the 225-units-per-hour production quota is an "essential function" of Denczak's single-point welding job. While Ford does not support its position with a written job description, it claims that production quotas are "essential functions" of all assembly-line related jobs. *See* JA 419 ("[W]e run the jobs to satisfy our customers. We have a schedule that we must follow."); JA 387 (noting that Denczak's products get shipped to the assembly line and that the line "absolutely" needs those parts); JA 389 (noting that making 80% of the production target is "probably acceptable" for an employee to avoid "discipline"). Common sense, to say nothing of Ford's business judgment, supports the point. Assembly-line positions, and dependent production jobs, are only as fast as the slowest member of the production team. While Ford does not take this point to its ruthless extreme—it acknowledges, for example, that an employee who meets 80% of a production quota may continue to work without discipline—it understandably takes the position that an employee who can satisfy just 35% of the quota comes up short in performing an essential function of the job. *See* 29 C.F.R. § 1630.2(n)(2)(i) ("The function may be essential because the reason the position exists is to perform that function."); *id.* § 1630.2(n)(3)(iv) (permitting courts to consider "the consequences of not requiring the incumbent to perform the function").

Denczak acknowledges that he produced less than 35% of Ford's production quota. And he acknowledges that he could not perform this requirement of the single-point welding job, with or without any accommodation. Viewing these facts in the light most favorable Denczak, no reasonable jury could conclude that he is "otherwise qualified for the job."

Nor, at any rate, has Denczak demonstrated that Ford "refused to make a reasonable accommodation for his disability." *Ameritech*, 129 F.3d at 866 (internal quotation marks omitted). While the ADA permits accommodations through "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B), as indeed happened at many points during Denczak's career, the Act does not compel employers to "create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000).

To this day, Denczak cannot identify a reasonable accommodation that Ford should have provided him during the two-month period between his inability to handle the single-point welding job and his retirement. While he could perform two other production jobs at the plant, *see* JA 373–76 (e.g., loading on the door line and assembling on the 273 cage nut/rail line), he acknowledges that neither position was open during the relevant period. Because the ADA does not require Ford "to displace existing employees from their positions" in order to accommodate Denczak, *Burns*, 222 F.3d at 257, neither of these proposed accommodations qualifies as "objectively reasonable," *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).

Nor does Denczak's suggestion that Ford assign him to a cleaning position qualify as "objectively reasonable." Again, no cleaning positions were open during the relevant period. The permanent cleaner 3 positions, moreover, are "seniority job[s]," JA 349, and Denczak admits that

his seniority is "not too high," *id*. And the temporary cleaner 2 positions, which by their definition would not provide a permanent solution, are awarded first to employees "hurt at work," JA 319, which was not true of Denzcak, and only then to employees with "personal" restrictions, JA 320, on the basis of seniority.

Denczak next argues that Ford failed to meet its duty under the ADA to engage in an "interactive process" with him to determine whether it had a position available that he could perform with his restrictions. Br. at 14. But, as the case upon which Denczak relies goes on to explain, an employer violates this requirement "*only if*, among other things, the employee can demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith." *Brietfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. Oct. 7, 2005) (internal quotation marks omitted) (emphasis added); *see Lockard v. GMC*, 52 F. App'x 782, 788 (6th Cir. Dec. 11, 2002) ("Because we find [the employee] failed to request a reasonable accommodation from her employer, the [employer's] duty to engage in an interactive search for a reasonable accommodation never arose."). Denzcak, however, has not pointed to any job that the interactive process could have identified.

III.

For these reasons, we affirm.