NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0766n.06

No. 10-3267

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Nov 15, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| SHARON JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVELAND CITY SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SHARON MCDONALD, in her individual and | ) | COURT FOR THE |
| official capacity, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee, | ) | |
| | ) | **O P I N I O N** |
| DONNA BOWEN, in her individual and official | ) | |
| capacity, | ) | |
| | ) | |
| Defendant-Appellee, and | ) | |
| | ) | |
| CLINTON FAULKNER, individually and officially, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    ROGERS and McKEAGUE, Circuit Judges, and DONALD, District Judge.[*]

**McKeague, Circuit Judge.**  Plaintiff Sha'Ron Johnson ("Johnson") filed suit against her

former employer, Cleveland City School District ("the District" or "Defendant"), as well as

individual District employees, alleging that they violated the Americans with Disabilities Act

_____

[*]The Honorable Bernice B. Donald, United States District Judge for the Western District of
Tennessee, sitting by designation.

("ADA") and Ohio law by failing to accommodate her disability, and firing her in retaliation for her filings and on the basis of her disability. The case came before this Court once already on the issue of whether certain claims were properly exhausted. On remand, the district court determined that Johnson's complaint never alleged a claim for retaliatory failure to accommodate. It further held that because her doctors provided documentation saying she is unable to "verbally control" resistive students, she is unable to fulfill an "essential function" of any of the contemplated jobs within the District and therefore was not "otherwise qualified" for the positions. As this was an element of the two remaining claims, failure to accommodate and retaliatory discharge, the district court granted summary judgment on all claims. We **AFFIRM**.

**I.**

This case is before this Court for the second time. Plaintiff Sha'Ron Johnson ("Johnson") began working for Defendant Cleveland City School District ("the District" or "Defendant") in 1989. She was well qualified and received positive work evaluations since that time. In November 1988, she was involved in a serious car accident that damaged her spinal cord. Further negligence during medical testing resulted in permanent damage to her spinal cord, causing Cervical Myelopathy. Cervical Myelopathy has symptoms similar to a stroke: her body weakens over time and is aggravated by stress, and acute symptoms can occur if she over-exerts herself.

Subsequently, her condition worsened. Ultimately, in 2002, the District's human resources department retained Dr. Patrick Bray to conduct a "fit for duty examination," to evaluate Johnson's disability. Dr. Bray sent the District his assessment, indicating that he believed Johnson had a disability as defined under the Americans with Disabilities Act ("ADA"), and therefore listed several

recommended accommodations: (1) No standing for more than one hour per day; (2) No continuous speaking; (3) Alternate sitting, standing, and walking; (4) Minimal stairs; and (5) Use of ambulatory aids such as a cane, and under extreme circumstances, an electrical scooter as needed.

The District looked for a position that could provide these accommodations. In 2004, a position called "academic interventionist" was created for Johnson by Susan Hawthorne-Clay, the principal at Adlai Stevenson Elementary, working with students in small groups, as well as doing programming, professional development, and writing grants. In 2005, when Hawthorne-Clay moved to Robert Jamison Elementary, Johnson moved with her. Unlike at Adlai Stevenson, Johnson was allocated to fill a teacher position at Jamison, but she continued to instead perform her "academic interventionist" duties.

In 2006, a new deputy chief in the District, Sharon McDonald, was visiting all schools in the District. On her visit to Jamison, McDonald met with Johnson and became concerned that Johnson was not fulfilling her intended position. McDonald spoke with Hawthorne-Clay, and then contacted Clinton Faulkner, the deputy chief of human resources, and Donna Bowen, the executive director of human resources.[2] Bowen indicated that Johnson was an allocated teacher at Jamison, but that a permanent substitute teacher was teaching Johnson's classes. After reviewing Johnson's file, Faulkner contacted Dr. Bray to find out about Johnson's disability accommodations.

On September 2, 2006, McDonald instructed Hawthorne-Clay to place Johnson back in the classroom. After several rounds of communication, Johnson was assigned to an eighth-grade

---

[2]McDonald, Faulkner, and Bowen are named as Defendants in this suit, in their individual and official capacities.

classroom at Jamison, on the second floor. The elevator to the second floor was broken, as was the climate control in that classroom. Johnson felt she needed to walk downstairs frequently in order to cool off. A permanent substitute teacher was temporarily assigned to the same room to assist Johnson with the transition. The District discussed several accommodations, including exploring ways to limit Johnson's speaking. Johnson stated that after receiving this assignment, she requested a first-floor classroom from "someone," but she did not know who. Another employee was assigned to escort Johnson's students to the first floor so that she would not have to take them up and down the stairs.

McDonald visited Jamison again on September 8, 2006 and sought out Johnson's classroom. She was accompanied by Assistant Superintendent Robert Moore, an assistant principal, and possibly a security officer. They observed that another teacher was teaching in the classroom, while Johnson sat with a small group of students. McDonald called Johnson into the hallway, and asked her why she was not teaching. Johnson replied that she was sick, and then left for the day.[3] Johnson did not return to the school that semester, but did continue to receive pay.[4]

On September 12, 2006, Johnson filed a complaint with the Ohio Civil Rights Commission ("OCRC"), alleging that "the ADA classroom restrictions that had been established, at the request

_____

[3] Johnson asserts that the heat in the room and the stress from the encounter caused her to have severe symptoms.

[4] Johnson soon submitted her Leave of Absence Form, on October 25, 2006. In the attached personal statement, Johnson wrote that her job assignment had been revoked on September 2, 2006, and that since September 10, "I have not returned to work due to the illegal action of a Cleveland Metropolitan School District administrator."

of the district's doctor, which allowed me to teach small groups of children," were "no longer being honored" by the new administration.[5] On December 14, 2006, the OCRC issued a no-probable-cause finding on Johnson's claim. It found that Johnson was not disabled, and that even if she was disabled, she was not denied a reasonable accommodation because her restrictions did not require a small class size or the need for a low-stress environment.[6] On December 20, 2006, the District denied Johnson's request for a leave of absence, and a few days later, Johnson was informed that since her claim was denied, they expected her to return to work—in the same classroom—on January 8, 2007, this time without an assistant. Johnson did return, but upon finding the room still too hot, she notified the school office and left before noon. The next day, she sent the District employees an email stating that she would not return immediately, but would instead "use sick time . . . until a resolution concerning [her] 'Fit for Duty' [was] reached." Johnson did not return to work the next day, and only worked five more days in the spring of 2007, each time doing work other than her normal classroom duties.

Johnson asked for, and was granted, permission to update her disability documentation. The District provided a fit-for-duty examination on February 8, 2007. Three doctors examined Johnson in the next few months; they all found she had a disability and offered similar proposed accommodations. Dr. Bray, conducting the fit-for-duty exam, updated his previous recommendations. In addition to the earlier accommodations, his letter dated February 8, 2007 stated

---

[5]No doctor statement in the record stated that Johnson was restricted to teaching small groups of students.

[6]Johnson filed a motion to reconsider, which was denied on January 11, 2007.

that Johnson should have "no work environment with extreme heat, humidity, or cold temperatures;" and should "not be required to verbally control resistant behavior in students that persists after initial warning."[7] Dr. Goraya, in a letter dated January 23, 2007, stated that Johnson should not be required to stand for more than one hour without intermittent sitting; must be able to alternate sitting, standing, and walking; must have minimal use of stairs (only two per day); must not work in an environment with extreme hot, humid, or cold temperatures; and must be allowed use of ambulatory aids as needed. Lastly, Dr. Gretter provided a letter dated April 27, 2007, which echoed the restrictions on standing, stairs, ambulatory airs, and hot work environments, but also stated that she should not be required "to verbally control resistive students." In the meantime, Principal Hawthorn-Clay told Johnson that she was not allowed to be at the school until human resources received the doctor's report; Johnson was called off sick for the remainder of the year but continued to receive her pay.

Ultimately, on May 15, 2007, Johnson and the District held a meeting to discuss how her disability could be accommodated. Johnson provided the doctors' letters and discussed her requested accommodations. She also informed the District that she had received a school counseling certification and that she would like a counseling position. School officials noted their concern with the restriction on disciplining students, and told Johnson that teachers and counselors have to be able to calm down students if they get out of hand. Johnson responded that with all of her training, she

---

[7]Plaintiff maintains that Bray intended to mean that Johnson should not yell at students; Bray stated in his deposition that "in plain English that means yell. . . . she shouldn't be required to yell at people." However, this deposition was taken years after the letter recommendation. Moreover, Dr. Gretter has provided no limitation on his similar restriction.

knew how to control students without violating her restrictions. However, one District official

testified that Johnson also stated at the meeting that she had problems with resistive students in the

past, because in large groups of older students, some get out of hand—she also stated that having to

correct them makes her condition worse. Johnson renewed her request for a small class size, but was

told it was not a reasonable accommodation.[8] The District indicated they would need to review the

medical records and get back to Johnson.

On May 21, 2007, Johnson filed this complaint in federal district court alleging a violation

of the Americans with Disabilities Act ("ADA"), as well as Ohio's civil rights statute, breach of

contract, and intentional infliction of emotional distress.[9] She named the District as a defendant, as

well as Sharon McDonald, Donna Bowen, and Clinton Faulkner in their individual and official

capacities.

In July 2007, notwithstanding the suit, the District sent Johnson a letter. It first stated that

the District believed it could accommodate Johnson's restrictions regarding standing, minimal stairs,

use of ambulatory aids, and hot work environments. However, it stated that it would be difficult to

accommodate her request to avoid disciplining resistive students: "[i]n essence, it appears that you

are asking to be exempted from the requirement of disciplining students and maintaining order in

the classroom if students do not obey your first directive that they behave. Maintaining order and

---

[8]This Court already recognized that the position that had allowed Johnson to teach small groups of children "did not exist in the School District," and "[t]he School District had no obligation to create" such a position in order to accommodate her. *Johnson*, 344 F. App'x at 112.

[9] The claim for violation of Ohio civil rights law, as well as the contract and IIED claims, have been dismissed and are not involved in this appeal.

discipline in the classroom is, of course, an essential function of the job of classroom teacher." It stated that such a request was therefore not a reasonable accommodation. Otherwise, however, the district indicated that it was still "willing to work with [her] to identify a vacant position for which [she would be] qualified." The letter also indicated that the District believed that the restrictions on verbally controlling students likewise prevented her from being able to safely perform a counseling position, because as a counselor, you "must be able to control the students with which you work." The letter invited Johnson's thoughts and comments on these issues.

Johnson responded to this letter, stating that she "possess[ed] a high level of competency when it comes to classroom management," and that her record would reveal her "exemplary disciplinarian skills as they relate to the management of student's [sic] behavior." In other words, she stated that the District's concerns over safety, security, and control of students were "unfounded." She did, however, continue to request a small-group position or a job as a counselor.

On August 17, 2007, Bowen contacted Johnson with three job openings for the coming year. All three involved teaching a full class of students. Though Johnson had represented that she was capable of controlling and disciplining students, Johnson now advised Bowen that she felt none of these offered teaching positions satisfied her ADA restrictions. She also reminded Bowen that she had asked for a counseling position.[10] Bowen asked Johnson if she was refusing the offered

---

[10] Johnson did not ever properly apply for a counseling position; she filled out an online application, but had simply filled out the teacher application because counselor positions are only posted when they are available. Per District policies, counselor positions must be separately applied for and require an interview process. The District was unable, under the collective bargaining agreement, to offer Johnson one of these positions.

positions. Johnson alleges that she explicitly told Bowen she was not refusing a position. She accepted a position at Gracemount Elementary School, but when the conversation ended, she still maintained that the positions were not consistent with her ADA restrictions.

Bowen called Johnson back later that day, and informed her that she would need to get medical clearance in order to begin the teaching position.[11] The District's leave of absence policy requires all employees who are returning from a leave of absence to supply a medical certification from a doctor regarding their ability to work. Bowen told Johnson that she needed this certification as to her abilities, and that they would have to "look at the notes to see" if she could fulfill the position.[12] Bowen repeatedly asked Johnson if she would get a medical certification, and told her that her refusal to do so would constitute a refusal of the position. The District asserts that Johnson refused to get such a medical statement, while Johnson denies ever making this refusal. However, Johnson admits she never agreed to get one; instead, each time Bowen asked, she "said absolutely nothing." Johnson stated that Bowen told her she would call back with further information. The call ended, but Bowen never called back.

---

[11]According to Johnson, Bowen informed her that they "could not give [her] that position at Gracemount," because it was "outside of [her] ADA restrictions." Johnson agreed, saying, "[t]hat's what I shared with you earlier this morning."

[12]Bowen later explained that while Johnson had "outlined her way of managing or disciplining" in her letter to Faulkner, the doctors' letters submitted seemed to conflict with this. They stated she could not "verbally control resistive students," which Bowen said "basically prevents one from being able to do the inherent functions of teaching that you be able to control behavior in the classroom."

Four days later, Johnson received a letter terminating her position with the District. The letter indicated that Johnson had refused the position at Gracemount and that the District was "unable to accommodate the restriction" regarding her "inability to discipline students, which is an essential function of positions that involve working with students in a teaching, counseling, or administrative capacity."

After her termination, Johnson continued to pursue remedies in federal and state court. On August 30, 2007, she filed another EEOC/OCRC charge, alleging retaliatory discharge. She also amended her complaint in federal district court to include an allegation of retaliatory termination. In addition to checking the box for retaliation, she checked the box for discrimination because of her disability and wrote next to it "revoked ADA accommodations."[13] The District soon filed a motion for summary judgment, which the district court granted on November 25, 2008. The court found that Johnson had not shown that the District had failed to accommodate her in any of the ways provided in Dr. Bray's 2002 list of accommodations prior to January 11, 2007. It also found that Johnson had failed to exhaust any alleged failures after January 11, 2007, because she had not filed an OCRC charge relating to them. Lastly, it found there was no causation evidence to support a retaliatory discharge claim.

On appeal, this Court affirmed in part and reversed in part. We upheld the dismissal of all claims alleging a failure to accommodate prior to January 11, 2007, finding that placement of Johnson in the regular classroom on the second floor at that time did not violate any of the

---

[13]The EEOC again issued a right to sue letter on March 18, 2008 and the OCRC issued its no-probable-cause determination on May 22, 2008.

accommodations then reported (based on Dr. Bray's 2002 report). We also affirmed the dismissal

of Johnson's retaliatory termination claim. However, this Court found that the OCRC filings were

broad enough to exhaust Johnson's claims for failure to accommodate *after* January 11, 2007 and

for discriminatory discharge. Lastly, we found that a claim for retaliatory denial of accommodations

reasonably arose out of the allegations made in Johnson's second OCRC/EEOC charge. Therefore,

the case was remanded for further consideration of the claims for (1) failure to accommodate after

January 11, 2007; (2) discriminatory discharge; and (3) retaliatory denial of accommodations after

January 11, 2007.[14]

On remand, the Defendants filed an amended motion for summary judgment. The district

court first concluded that while our Court had determined Johnson exhausted a retaliatory failure to

accommodate claim in her second OCRC/EEOC charge, she did not actually raise any such claim

in her complaint. *See Johnson v. Cleveland City School Dist.*, No. 1:07-CV-1610, 2010 WL 522804,

at *3 n.4 (N.D. Ohio Feb. 5, 2010) ("[T]he Court will accept that a claim of discriminatory discharge

could be inferred from the allegations in Paragraph 21 of the First Amended Complaint. No degree

of leniency in the reading of the First Amended Complaint . . . could lead a reasonable person to

believe that a claim for retaliatory failure to accommodate was intended or fairly raised in the First

---

[14]In October 2009, the Cuyahoga County Court of Common Pleas granted Defendants' Motion for Summary Judgment in Johnson's state cause of action, dismissing all of Johnson's claims under state law. However, the Eighth District Court of Appeals of Ohio reversed and remanded for trial, finding that there was a question of fact as to whether Johnson was "otherwise qualified" for the District positions, and thus stated a claim under Ohio's discrimination law. *Johnson v. Cleveland City Sch. Dist.*, No. 94214, 2011 WL 2409901 (Ohio App. 8 Dist. 2011**).** We note that we are not bound by that state court decision. *See infra fn.17.*

Amended Complaint."). The court therefore held that "no claim for retaliatory failure to accommodate is part of this action, and no disposition on such a claim is possible or proper, regardless of whether the issue was presented in the OCRC/EEOC charges filed by the Plaintiff." *Id.* at 3.

The district court then addressed the failure to accommodate claim. It found that Johnson had established a genuine issue of fact as to whether she has a recognized disability. The court determined, however, that she failed to establish that she had requested an objectively reasonable accommodation that the District had refused. *Id.* at *4. The court determined that there was no evidence to demonstrate she was denied accommodations regarding standing, sitting, walking, use of ambulatory aids, minimal stair claiming, or continuous speaking restrictions. *Id.* at *6. As for the temperature restrictions, the court noted that there was no actual record of Johnson asking anyone in authority to address the temperature and climate control issues *after* her disability restrictions were amended to include a medical need for climate control. *Id.* Furthermore, it determined that, after January 11, 2007, there was no evidence that Johnson would have been required to teach in a classroom that was not climate controlled. Addressing Johnson's argument that she should have been offered a small-group or counseling position, the court stated, "[t]here is no evidence that any doctor has ever indicated that Dr. Johnson could not teach a full size class provided her other restrictions were met. There is absolutely no evidence to show that Plaintiff's disability required an accommodation assigning her to teach only small groups of students, or assigning her to a position as a school counselor." *Id.*

Finally, the court determined that the last requested accommodation—prohibiting Johnson from a position where she would need to "verbally control resistive students"—was not a reasonable accommodation for a teacher or counselor at an elementary or middle school. The court stated that all teachers and counselors must deal with students even when misbehaving, and therefore must be "physically, mentally, and emotionally capable of managing and controlling students in those circumstances." *Id*. at *7. Therefore, it held that the ability to control, manage, and discipline students is an "essential function" of a teacher, tutor, or counselor. Any request for an accommodation that does not require her to do this task is not reasonable, the court said, and insofar as the doctors agreed she cannot, she is not qualified to perform the function of teacher or counselor. *Id.* at *8. Therefore the court dismissed the claim for failure to accommodate.

The district court then addressed the claim for discriminatory discharge. It again found that the claimed restriction against "verbally controlling" students made Johnson not qualified for her position. *Id.* It noted that while Johnson asserted that "yelling and shouting" are not necessary for her position, the letters submitted from her doctors did not limit the disability restrictions to "yelling and shouting;" instead, two doctors put forth restrictions that are "*far* broader" that refer "to any form of verbal control, without regard to volume or intensity." *Id*. (emphasis in original). "It is unreasonable to believe that a teacher, counselor, or other school employee charged with caring for and working with children can maintain control and discipline among their students if they cannot 'verbally control' students beyond giving an initial warning." *Id*. The court therefore found that Johnson had proposed no reasonable accommodation that would allow her to perform the essential

element of discipline, and thus failed to satisfy the qualification element of the claim. The court dismissed this claim as well.

Because the district court granted summary judgment on all remaining claims, the court's order was a final appealable order, from which Johnson timely appealed.

**II.**

A grant of summary judgment is made as a matter of law, and therefore the district court's grant of summary judgment is reviewed *de novo. See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004); *Thompson v. Williamson County, Tennessee*, 219 F.3d 555, 557 (6th Cir.2000). In other words, we apply the same standard as that applied by the district court.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of a genuine issue of fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At this stage, a district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of that party's case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995). "The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.

A.  Retaliatory Failure to Accommodate

The district court first determined that the amended complaint did not include any claim for

retaliatory failure to accommodate, despite Johnson's exhaustion of that issue in her OCRC/EEOC

filing.  Johnson failed to raise this as an issue on appeal, and therefore may very well have waived

the argument[15]  However, even if the issue has been preserved, the district court did not err in this

determination. This Court's prior decision only looked at the narrow issue of whether Johnson's

EEOC charges exhausted various claims. *See Johnson*, 344 F. App'x at 110-11.  It never addressed,

or even discussed, whether such a claim was included in the complaint.  Therefore, the district court

was correct to analyze whether the claim was even properly before the court.

The amended complaint sets forth one very general claim in Count I, alleging violation of

the ADA.[16] While the complaint, read liberally, includes allegations to support the other claims, it

does not include enough to notify the Defendants of a retaliatory failure to accommodate claim.

Indeed, it states that Johnson presented doctors' letters in 2006 and early 2007, but that "suddenly

on or about September 2, 2006, Defendants refused to provide reasonable accommodations to

---

[15] The only place that Johnson ever addresses the court's actual reason for dismissal—failure to include the claim in her complaint—is in a footnote. (Appellant Br. at 32 n.10) (arguing that the Complaint "clearly stated" that Defendants "terminated" Plaintiff in retaliation—not mentioning failure to accommodate).

[16]  The complaint states that "on or about August 21, 2007, Defendants, in retaliation for Plaintiff filing the OCRC/EEOC complaint and the current lawsuit, terminated Plaintiff effective August 22, 2007." However, this Court has already upheld the district court's determination that "there was no causal connection between Johnson's protected activity and her termination," and affirmed dismissal of that claim. *Johnson*, 344 F. App'x at 113.

Plaintiff," and that Defendants again "refused to provide reasonable accommodations" on February 26, 2007. Both of these allegations of denied accommodations were before she filed any OCRC or EEOC complaint. The only mention of retaliation in the complaint is later, alleging Johnson was "terminated" in retaliation for her OCRC/EEOC filings; the amended complaint never asserts any actions failing to accommodate her after her filings, much less *because of* her filings. The content of the amended complaint is wholly insufficient to put the Defendants on notice of a retaliatory failure to accommodate claim, and we therefore affirm summary judgment on that claim.

B. <u>Failure to Accommodate</u>

In regard to Johnson's failure to accommodate claim, the district court made several determinations. First, it found that there was no evidence to demonstrate that Johnson was denied accommodations regarding standing, sitting, walking, use of ambulatory aids, minimal stair climbing, or continuous speaking restrictions. It also determined that there was no evidence that the District attempted to require her to teach in an environment without climate control. Ultimately, the court determined that the doctors' restriction prohibiting Johnson from "verbally controlling" students made her unable to perform an "essential function" of any of the contemplated jobs in the District. Thus, asking for such an accommodation was not a reasonable request, and Johnson was not "otherwise qualified" for the position of teacher or counselor.

Johnson argues that the district court erred in holding that she did not request a reasonable accommodation that the District refused. She asserts, in summary, that she requested the following "reasonable accommodations:" (1) employment as an "academic interventionist"; (2) employment as a small-group teacher; (3) teaching in a climate-controlled classroom on the first floor; (4)

employment as a school counselor; (5) a substitute teacher to assist in the transition period; and (6) numerous other available jobs. (Appellant Br. at 23.) She asserts that each of these was "denied," and thus the District failed to provide "necessary accommodations." She also asserts that none of the three positions offered to her on August 17, 2007 was consistent with her ADA restrictions. (*Id.*)

In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See DiCarlo,* 358 F.3d at 419.

To be "otherwise qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004). "If the employer claims [] that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996).

The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations. *See Tubbs v. Formica Corp.*, 107 F. App'x 485, 488-89 (6th Cir. 2004). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any

particular accommodation would impose an undue hardship on the employer. *DiCarlo,* 358 F.3d at 419.

We note that our task in this case is to review the doctors' letters and the accommodations they stated were necessary for Johnson's disability. First, in 2002, the school district receivd a letter from Dr. Bray summarizing the results of his fitness-for-duty examination of Johnson. Bray's letter outlined the "reasonable accommodations" that would address her disability at the time. To repeat, these were: 1) No standing for more than one hour per day; 2) No continuous speaking; 3) Alternate sitting, standing, and walking; 4) Minimal stairs, and 5) Use of an ambulatory aid, as needed.

This Court has already concluded that Johnson was not denied an accommodation as of January 11, 2007—in doing so, we concluded that the school's removal of her specially created position and placement of Johnson in a regular classroom on the second floor of the school was not a failure to meet the accommodations then required. *Johnson*, 344 F. App'x at 112 ("Johnson has not shown that the teaching position in the second floor classroom failed to provide these accommodations."). Therefore, this Court has already determined that a regular teaching position, whether on the first or second floor, is not in violation of any of these restrictions.

However, after Johnson was unable to teach in that second-floor room due to the lack of temperature controls, she asked for permission to update her disability documentation, which she did beginning January 23, 2007. At that time, Johnson obtained a letter from Dr. Goraya. To repeat, this letter listed the following "reasonable accommodations": 1) No standing for more than one hour without intermittent sitting; 2) Alternate sitting, standing, and walking; 3) Minimal stairs (limited

to twice per day); 4) No work environment with extreme hot, humid, or cold temperatures; and 5) Use of ambulatory aids, as needed.

Dr. Bray submitted a second letter on February 8, 2007, updating what he suggested as "reasonable accommodations" for Johnson. In addition to his previous list, he included: 1) No work environment with extreme heat, humidity, or cold temperatures; and 2) Johnson should "not be required to verbally control resistant behavior in students that persists after initial warning."

Lastly, on April 27, 2007, Johnson obtained a letter from Dr. Gretter. To repeat, Gretter listed the following accommodations: 1) No standing for more than one hour; 2) Alternate standing, sitting, and walking; 3) Minimal stair climbing; 4) Use of ambulatory aids "in extreme circumstances"; 5) Work in an environment free of extreme heat, humidity, and cold; and 6) Johnson should not be required "to verbally control resistive students."

Therefore, by the time all of these letters had been received, the following accommodations were deemed necessary by her physicians:

A) A work environment free of extreme heat, humidity, and cold
B) No standing for more than one hour per day
C) Alternate sitting and standing
D) Minimal stair climbing
E) Ambulatory aids as needed
F) Not be required to verbally control resistive students.

As the district court noted, Johnson also argued that other accommodations should have been provided:

G) An aide assigned to escort her students up and down stairs and to otherwise relieve her with regard to standing, walking, and voice-strain
H) a position as a small group teacher
I) a position as a school counselor

The question in this case is which of these actually constitute "accommodations" that the District was required to provide; which are "reasonable," and whether the District failed to make one of these "reasonable accommodations" for Johnson.

At the outset, it must be noted that the claim being assessed is for denial of accommodations; this means that the employer, the District, has an obligation to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability . . ." 29 C.F.R. § 1630.9(a). Therefore, the District was required to reasonably "accommodate" the various restrictions provided by her doctors' evaluations. It does not mean, however, that the District was required to provide particular jobs that Johnson requested, or to meet additional accommodations she believes should have been provided that are not required by her indicated limitations. *See Trepka v. Bd. of Educ.*, 28 F. App'x 455, 459-60 (6th Cir. 2002) ("The employer need not provide the accommodation that the employee requests or prefers. Instead, the employer retains the "ultimate discretion" to choose another effective accommodation . . . . Accordingly, an employee is not entitled to a particular reasonable accommodation if another reasonable accommodation is provided."); 29 C.F.R. § 1630.9(d) (2001).

Therefore, though Johnson seems to have requested, and indeed, expected, a wide variety of accommodations, this Court's analysis must focus on the limitations indicated by the doctors to determine whether she was denied a necessary, reasonable accommodation. Because the new restrictions provided by her doctors—specifically the one preventing her from verbally controlling

students—make her no longer qualified to fill a position as a teacher or counselor in the District, we

**AFFIRM** the district court's grant of summary judgment on this claim.[17]

An individual who is "otherwise qualified" for a position is someone who, with or without reasonable accommodation, can perform the essential functions of the position. The term "essential functions" means "the fundamental job duties" of a position. 29 C.F.R. § 1630.2(n)(1). In determining whether something is an essential function of a job, "consideration shall be given to the employer's judgment as to what functions of a job are essential," as well as consideration of any written descriptions of the job. 42 U.S.C. § 12111(8); *Denczak v. Ford Motor Co.*, 215 F. App'x 442, 444 (6th Cir. 2007).

---

[17]We recognize that the Ohio courts came to the opposite conclusion in Johnson's state court case, *see Johnson*, 2011 WL 2409901; however, we are not bound by that determination. While the Ohio courts will seek guidance from federal cases interpreting the ADA, the reverse is not true; this Court need not, and does not, defer to state court interpretations of federal laws. *See, e.g., Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009) (noting that since "[t]he issue before us is the interpretation of a federal statute," the court was "therefore [] not bound by decisions of the state courts of Ohio interpreting the federal" law). A state court's decision on such matters may be persuasive, but in this case, the state court's reasoning is not persuasive and therefore we decline to follow it. Furthermore, the doctrine of res judicata is inapplicable in this context and therefore does not prevent us from reaching our own conclusion. Our Court must give the same preclusive effect to a state court judgment as that judgment receives in the rendering state. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010). In Ohio, res judicata can only be applied if it involved a prior *final*, *valid decision on the merits*. Ohio courts have already determined that "[t]he denial of a [] motion for summary judgment is not a final adjudication triggering application of res judicata." *Conley v. Smith*, No. 2005CA00215, 2006 WL 786847 (Ohio App. 5 Dist. 2006); *see also Lucchesi v. Fischer*, 179 Ohio App. 3d 317, 322, 901 N.E.2d 849, 853 (Ohio App. 12 Dist. 2008) ("noting that res judicata requires a "valid, final judgment rendered upon the merits" and that "[t]he trial court's decision denying the board's first motion for summary judgment was not a final judgment rendered upon the merits"). Our Court is therefore not precluded in any way from reaching the correct decision in this case.

Two different doctors submitted letters indicating that Johnson has a medical impediment, under which she cannot be required to "verbally control resistive students" or "verbally control resistant behavior in students that persists after initial warning." As the District explained to Johnson in its letter on July 17, 2007, these restrictions are "problematic." They seek to exempt Johnson from "the requirement of disciplining students and maintaining order in the classroom," which is "an essential function of the job." The District's letter explained that "[t]he consequences of a failure to maintain such order result in a direct threat to the safety and security of you, the students, and other faculty, staff, and students in the building," and fail "the responsibility of the District to provide an orderly environment to its students for learning." Because of this, the District stated that even a small-group or counseling position would implicate such restrictions.

Johnson admits that "being able to discipline students is an essential function of a good teacher."[18] The court below agreed with the District: "Teachers and counselors, whether working with large groups, small groups, or one-on-one, are required to deal with the students in their care, not only when they are quiet and well behaved, but also when they are loud, restless, and possibly belligerent. . . . Teachers, counselors, and other adults employed at schools need to be physically, mentally, and emotionally capable of managing and controlling students in those circumstances." *Johnson,* 2010 WL 522804, at *7.

---

[18]We acknowledge that if Johnson had disputed whether controlling students was an "essential function" of the position (instead of merely disputing whether she is able to *fulfill* that function), the burden would have been on the District to demonstrate that it is, and a multi-factor test would have to be addressed. *See, e.g., Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir.2000) (quoting 29 C.F.R. § 1630.2(n)(3)). However, because Johnson does not dispute the "essential" nature of the ability to control students, we need not conduct that analysis here.

Johnson argues that the doctors simply meant she should not be in a position where she has to "yell" at the children; she responded to the District's letter by stating that her extensive training enabled her to control students without having to resort to such yelling. However, neither of the doctors' letters narrows the restriction so extensively; instead they state that she cannot be required to verbally control students. Whether Johnson feels that her limitations are less than that—either because she believes she can control students completely, or because she believes she can prevent the need for yelling—is immaterial. "[A] plaintiff's uncorroborated belief in his physical prowess is not enough to counter affirmative evidence to the contrary." *Boback v. Gen. Mot. Corp.*, 107 F.3d 870, 1997 WL 3613 (6th Cir. 1997) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362-63 (10th Cir. 1995). The doctors' restrictions must be taken at face value and the District was reasonable—indeed, correct—to assume that Johnson could not perform a task that her doctors indicated she was incapable of safely performing. *See Manigan v. Southwest Ohio Regional Transit Auth.,* 385 F. App'x 472, 478 (6th Cir. 2010) ("Manigan argues that he could perform his job with or without reasonable accommodation . . . . It is unclear whether Manigan asserts that he was able to drive more than 8 hours when required. Any such argument would fail, however, in light of his doctor's restrictions.")*;Boback,* 107 F.3d 870 at *3 ("In response [to the physician's statement of his physical limitations], Boback offers only his personal observation that he could perform such work.").

Johnson argues that she was "always willing to accept a traditional classroom teaching assignment . . . with an aide." (Appellant Br. at 34.) She indirectly implies that she would be able to fully perform the functions of a teacher or counselor if she had someone to help her. However,

"the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins,* 227 F.3d at 729; *see also* 29 C.F.R. pt. 1630, app. § 1630.2(o) ("An employer or other covered entity is not required to reallocate essential functions."). Furthermore, as the district court recognized, having another person "instantly available to step in and enforce order at all times" would require the employment of two full-time positions to do the job of a single employee—this is clearly an undue burden on the District and is not a reasonable accommodation.

Johnson also asserts, correctly, that the ADA requires the parties to engage in an "informal, interactive process," in order to explore possible accommodations. However, the District appears to have done just that, both before and after this action was filed. The District held meetings, exchanged letters, and had phone conversations with Johnson in trying to see if her disability could be accommodated in the school environment. Just two weeks after the last doctor's letter was submitted, the District held a meeting with Johnson, at which the officials noted their concern with the discipline restriction and Johnson responded that she knew how to control students—in any class size. She nevertheless continued to express her desire for a counseling or small-group position.

The interactive process continued when the District sent Johnson the letter, stating that Johnson's other accommodations (regarding temperature, standing, stairs, speaking, etc) could be met, but noting that the restriction on "verbally controlling" students interfered with an "essential function" of any job with the District, and therefore was not a reasonable request. The letter encouraged Johnson to respond. Again, Johnson responded that she could discipline students. The District said they would have to review the medical files and get back to her.

Finally, Bowen called Johnson on behalf of the District, to offer her three job positions as a teacher. Based on its discussions with Johnson herself, who asserted that she could control a full classroom, the District believed the positions it offered to her included all reasonable accommodations warranted by Johnson's disability. However, Johnson objected, saying these positions were not in line with her ADA restrictions. The District had already told Johnson that the restriction on "verbally controlling" students was not a reasonable request, and interfered with an "essential function" of any job with the District. Yet when they called to offer her jobs that met all of her other restrictions, she maintained that these positions did not meet her ADA limitations.

Johnson ultimately stated that she would take one of the teaching positions. Because of this, Bowen then told Johnson she would need to get documentation from her doctors saying she was capable of performing the job of a teacher, as required by the District's leave policy. In light of Johnson's doctors stating that she could not "verbally control" students, and her own statements in that very phone call that a classroom position was outside her restrictions, the district was even more reasonable in requesting such a medical certification.

But Johnson did not agree to get any such clearance. *See Sullivan v. River Valley School Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) (upholding suspension of teacher when he refused to undergo physical fitness-for-duty examination). Johnson seems to imply there is a question of fact as to whether she "refused," but the record demonstrates that there is no disputed issue of fact as to whether she ever agreed to get a medical examination. Instead, Johnson's own deposition demonstrates that in the phone call, Bowen repeatedly told her that a medical certification was necessary, and that not getting one would be considered a refusal of the positions. Johnson states

that at the beginning of the call, Bowen told her she needed to get a medical certification, but Johnson was silent. Despite Bowen's repeated questions about the medical examination, Johnson never agreed to get one. Instead, Johnson stated that none of these positions were in line with her ADA restrictions, and according to her deposition, asked "Now you're asking me to go back to the same doctors who said that I had these restrictions, and now you want somebody to write a letter and say I don't?" By Johnson's own account, Bowen repeatedly asked Johnson if she would get the certification, and stated that failure to do so would constitute rejection of the positions, but Johnson "said nothing," "said absolutely nothing," and "just went blank . . . and . . . said absolutely nothing."

An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir.2008).[19] By the time of Johnson's second phone conversation with Bowen, the District had done all of these things. At this point, however, the District had to act in response to Johnson's own actions. Johnson emphatically stated that the offered positions were not in line with her restrictions. When Bowen called back to tell her that a doctors' clearance would be needed, Johnson seemed to indicate her objection: in the words of her attorney at oral argument, "she said, "I've already submitted three doctors'

---

[19]Additionally, even if the District were found not to act completely in good faith, an employer's failure to participate in the interactive process is not actionable unless the employee can demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith. *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005). Because Johnson's restriction would prevent her from being reasonably accommodated, the claim is not actionable.

statements—they are permanent.'" Bowen clearly and repeatedly told her the medical clearance was necessary and that failure to get one would be a refusal of the position, but Johnson was completely, repeatedly silent in response to Bowen's requests for her to get such clearance. The call ended without Johnson ever responding to Bowen's requests.

Considering that this conversation occurred as a new school year was about to begin, and in light of Johnson's objections to the positions and Bowen's clear statements that Johnson needed to get medical clearance, the District was entirely reasonable to interpret Johnson's complete silence in response to requests for an examination as a refusal of the examination and thus refusal of the positions. After several rounds of back and forth, the District was still faced with doctors' letters clearly indicating that Johnson could not verbally control students. Johnson had not offered or even agreed to discuss clarification of that restriction with her doctors. As her counsel also stated at argument, "these were mandates of the doctors. To suggest that she, in some way, could get that lifted, is questionable. . . . [T]hese were permanent restrictions." A physical restriction on Johnson's ability to "verbally control students" was not a "reasonable accommodation," and the District was not required to grant it.

Instead, because Johnson's doctors indicated that she was unable to safely and effectively "verbally control" students, she was not "qualified for the position, with or without reasonable accommodation." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir.2007). The District was left with no choice but to fire her, as she was unable to do the job. *See, e.g., Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) ("A physician must be able to talk to patients, discern their ailments, and describe treatments to them. . . . Because the

accommodations—that Jakubowski had the burden to propose—do not address a key obstacle preventing him from performing a necessary function of a medical resident, he has not met his burden under the Act of proving he is an otherwise qualified individual for the position."); *Manigan*, 385 F. App'x at 478 (upholding summary judgment for employer when truck driver was unable to drive more than eight hours when the route requires, as such was an "essential function" and thus plaintiff "failed to show that he was otherwise qualified to perform the essential functions of his position with or without reasonable accommodation"); *Denczak v. Ford Motor Co.*, 215 F. App'x 442, 444-45 (6th Cir. 2007) (holding that a production-line quota was an "essential function" of the line-worker's job and thus if a worker was unable to meet or at least approach this quota, "no reasonable jury could conclude that he is 'otherwise qualified for the job'").[20]

Because no set of reasonable accommodations could allow Johnson to perform a job instructing students, we **AFFIRM** the district court's grant of summary judgment to the District on this claim.

C. Discriminatory Discharge

To prevail on a claim for discriminatory discharge, the plaintiff must show that (1) she is disabled, (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse action; (4) the employer knew or had reason to know

---

[20]Because Johnson is not "otherwise qualified" for the District positions, we need not determine whether all other accommodations were provided. However, we note that none of the other proposed reasonable accommodations were denied, either.

of her disability; and (5) she was replaced or the job remained open. *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

Here, the district court found that the restriction against "verbally controlling" students made Johnson not qualified for her position. The court therefore found that Dr. Johnson had proposed no reasonable accommodation that would allow her to perform the essential element of discipline, and thus failed to satisfy the qualification element of the claim. Johnson's direct response to this determination is very brief. Her only response to the court's determination on the qualification element is that "while being able to discipline students is an essential function of a good teacher, yelling is not." (Reply Br. at 4.) Johnson's dispute with the court below is that she feels the limitations written by her doctors did not mean what they said; instead, she argues the restriction was only on "yelling and shouting." However, the District was required to determine whether Johnson could perform any job with the restrictions *as listed* by her doctors. Two different doctors specified that she could not "verbally control" resistive students; Dr. Bray did not attempt to qualify this restriction until his deposition much later; Dr. Gretter has never qualified or limited his restriction. Therefore, for the reasons already assessed, Johnson's inability to verbally control students made her unable to perform an "essential function" of the considered positions. Therefore, she was not "otherwise qualified" for these positions, with or without a reasonable accommodation, and we **AFFIRM** the district court's grant of summary judgment on this issue.

**IV.**

Because Johnson is medically unable to "verbally control" students, she is not qualified for any of the available positions within the District. Therefore, the District did not deny her reasonable accommodations or terminate her in violation of the ADA. We **AFFIRM** the district court's grant of summary judgment to the District on all remaining claims.