[Cite as *Nist v. Nexeo Solutions, L.L.C.*, 2015-Ohio-3363.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deborah J. Nist, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 14AP-854 |
| v. | : | (C.P.C. No. 13CV-2401) |
| Nexeo Solutions, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 20, 2015

*Law Offices of Russell A. Kelm,* and *Russell A. Kelm,* for appellant.

*Vorys, Sater, Seymour and Pease LLP, Robert E. Tait,* and *David A. Campbell,* for appellees.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Deborah J. Nist, is a former employee of defendant-appellee, Nexeo Solutions, LLC ("Nexeo"). Nist was discharged by Nexeo in November of 2012, at the age of 60. She filed suit alleging age discrimination and failure to pay overtime against Nexeo and three supervisors involved in the decision to terminate her employment: Joy Caudill; Carolyn Harrison; and Garrett Duncan. The trial court granted a motion for summary judgment and a motion to strike in favor of appellees, and it is from this judgment that Nist appeals, assigning the following as error:

> I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF AGE DISCRIMINATION.

>    II. THE TRIAL COURT ERRED IN STRIKING LARGE
>    PORTIONS OF THE AFFIDAVIT PLAINTIFF SUBMITTED
>    IN OPPOSITION TO SUMMARY JUDGMENT.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Because summary judgment is a procedural device to terminate litigation, all doubts must be resolved in favor of the non-moving party. *Wells Fargo Bank, N.A. v. Walker,* 10th Dist. No. 09AP-947, 2010-Ohio-3698, ¶ 8. The evidence must be construed against the moving party, and all reasonable inferences must be drawn in favor of the non-moving party. *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). With these standards in mind, the following facts are relevant to our review.

{¶ 3} Nist was born on April 2, 1952. She began employment with Ashland Chemical in June of 1995. All of the employees in the distribution business of Ashland Chemical were transferred to Nexeo effective April 1, 2011. At the time she was terminated, Nist was employed as a Senior Procurement Assistant in the Chemicals Purchasing Department for Nexeo. Throughout her employment Nist was rated as a valued contributor, including her most recent performance appraisal for the year ending September 30, 2011.

{¶ 4} In May of 2012, Nist was assigned an additional 30-40 suppliers to handle as a Purchasing Coordinator. Her workload increased substantially because the volume of emails she was required to respond to multiplied. Nist needed to work longer hours in order to keep up and started working 10-14 hour days.

{¶ 5} Nist's supervisors did not acknowledge that, by distributing suppliers based only on the number of purchase orders generated, they were not taking into consideration the increase in the number of contacts and common carriers to arrange shipments or the issues involved with working with suppliers. Nexeo did not take into consideration the fact that Nist's two largest suppliers involved troubleshooting and technical issues which pulled her away from her other duties, even though Nist's supervisor, Joy Caudill, was aware of these issues.

{¶ 6} In July of 2012, Nist was placed on probation and a performance improvement plan ("PIP") because she was unable to keep up with the increased workload. Nist did not report all of the hours she was working overtime. Thus, when the

issue of long hours was brought to management's attention, Caudill's supervisor, Carolyn Harrison, responded that Nist had only reported 46 hours of overtime since January.

{¶ 7} While on probation, Nist reported to Caudill that she was suffering from anxiety due to the increased workload and was going to see a doctor. Caudill filed a workers' compensation claim for Nist, knowing that the increased workload was taking a toll on Nist's health.

{¶ 8} Nist showed improvement in her work results. Nevertheless, her PIP was extended for another month in September of 2012.

{¶ 9} During the first three weeks of October, Caudill falsified having weekly PIP meetings with Nist. On October 18, 2012, Caudill announced to Nist that as far as she was concerned the PIP was over and Nist's goals were satisfied. During Nist's last meeting with Caudill in October, Caudill told Nist that she was going to revisit the alignment of suppliers between several other package buyers whose workload had declined. This was not done prior to Nist's termination.

{¶ 10} Despite Nist having successfully completed her PIP, Nist was terminated on November 15, 2012, ostensibly over an issue of needing to expedite a small order that could not be shipped from the normal supplier because disruption from Hurricane Sandy closed the supplier.

{¶ 11} After Nist was terminated, her two largest suppliers, Afton Chemical and Polartech, were assigned to a young man who had previously been working as an intern. Nexeo hired Ryan Quinn, who is in his mid-twenties, in November of 2012. Although Quinn works in a different department, after about five months, he began handling duties with respect to Nist's former two major suppliers.

{¶ 12} The trial court granted summary judgment in favor of Nexeo on the claim for age discrimination and the claim for unpaid overtime. The overtime claim has not been appealed. Because the trial court struck portions of Nist's affidavit submitted in opposition to the motion for summary judgment, we review the propriety of granting the motion to strike before addressing the merits of the motion for summary judgment.

## II. MOTION TO STRIKE

{¶ 13} In her second assignment of error, Nist contends the trial court erred in striking large portions of the affidavit that she submitted in support of her memorandum in opposition to Nexeo's motion for summary judgment.

{¶ 14} The trial court struck several paragraphs.  We review the trial court's decision to grant the motion to strike under an abuse of discretion standard.  *Pickens v. Kroger Co.*, 10th Dist. No. 14AP-215, 2014-Ohio-4825, ¶ 9.

{¶ 15} The trial court struck paragraphs 9 and 14 from Nist's affidavit as hearsay. Affidavits not based upon personal knowledge or that fail to set forth facts that would be admissible in evidence are subject to a motion to strike.  *Carter v. U-Haul Internatl.,* 10th Dist. No. 09AP-310, 2009-Ohio-5358, ¶ 10, citing *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340 (10th Dist.), ¶ 17.  The stricken paragraphs refer to Nist's replacement and whether someone substantially younger replaced her.  They provide as follows:

> 9.  Defendants told employees that I would be fine financially if I lost my job since my home was almost paid off.  Caudill told employees that my termination was not being done because of her age.  After terminating me, defendants hired Ryan Quinn, who is in his mid-20s.  He has been assigned two of the largest suppliers, Afton Chemical and Polartech, previously handled by me, and Quinn has thus effectively replaced me.
>
> * * *
>
> 14.  A young guy who was hired after I left took over my two largest suppliers (Afton Chemical and Polartech).  His name is Ryan Quinn and he is 25 years old.  He had worked for the company several years ago during the summer as an intern before starting college.

{¶ 16} Nexeo argues that Nist's deposition testimony demonstrates that her allegations that Quinn replaced her are based on hearsay evidence.  At her deposition, Nist was questioned about her allegations in the complaint that Quinn replaced her.  Nist testified that after her discharge from Nexeo, she had lunch with Diane Buschjost, a co-worker who also reported to Joy Caudill, Nist's supervisor.

{¶ 17} When Nist testified at her deposition, her statements that she was replaced by Quinn were based on conversations she had with a co-worker. However, at the time she filed her affidavit, the basis for her knowledge that she was replaced by Quinn was different. She relied upon Quinn's own deposition testimony that he was born on September 2, 1988, that in November of 2011 he applied for purchasing jobs with Nexeo, that he was interviewed by Carolyn Harrison in October of 2012, that he was hired on November 19, 2012, and that he began working with Nist's two largest vendors, Afton Chemical and Polartech in April of 2013.

{¶ 18} Thus, at the time she filed her affidavit, Nist had independent knowledge of Quinn's age and job history with Nexeo from Quinn's own deposition. Because Nist was no longer relying on hearsay of a co-worker about being replaced by Quinn, it was an abuse of discretion for the trial court to strike paragraphs 9 and 14 of the affidavit.

{¶ 19} The trial court also struck paragraphs 3, 4, 6, and 12 from Nist's affidavit on the grounds that her sworn affidavit contradicted her sworn deposition testimony. A party may not oppose a motion for summary judgment with an affidavit that contradicts former deposition testimony without sufficient explanation. *Matteucci v. Cleveland State Univ.*, 10th Dist. No. 10AP-576, 2011-Ohio-2114, ¶ 23. The first paragraph at issue provides as follows:

> 3. In May 2012, I was assigned an additional 30-40 suppliers to handle as a Purchasing Coordinator. Increasing the number of suppliers multiplied my workload because the number of e-mails I was required to respond to each day also multiplied. In assigning this workload to me, defendants set me up to fail. I was the oldest employee in my work group.

{¶ 20} Nexeo takes issue with Nist's statement that she was set up to fail. Nexeo argues that in her deposition, Nist acknowledged that she was treated the same as her co-workers and that management was seeking to equalize the number of purchase orders processed each day.

{¶ 21} In fact, a close examination of Nist's deposition shows that her testimony was consistent between her deposition and her affidavit. Nist was not taking issue with the number of purchase orders generated, but rather the number of suppliers she was required to handle, and the increased amount of work generated by the increase in

suppliers. "They ran reports, wanted to see how many purchase orders each person placed.  But that didn't tell them how many suppliers that each individual had."  (Depo., 92.)  "I wasn't telling them that I couldn't keep up with the purchase order numbers. * * * I was telling them that I couldn't keep up with that because of everything that was involved with those suppliers." (Depo., 93.)

{¶ 22} Nist did not say that she was treated the same as her co-workers.  She testified that at the time the extra suppliers were handed over to her, "I had several co-workers voice their concern of the large number that I had.  And they didn't know how I was going to be able to handle that many suppliers."  (Depo., 94.)

{¶ 23} By conflating the issue of number of purchase orders with the issue of number of suppliers, Nexeo attempts to show a contradiction where none exists.  Therefore, it was an abuse of discretion to strike paragraph 3 from the affidavit.

{¶ 24} Paragraphs 4 and 6 of the affidavit refer to Nist's claim for overtime pay which she is not appealing.  Therefore, we decline to address this issue.

{¶ 25} Finally, in paragraph 12 of the affidavit, Nist states:  "Any special projects were assigned to the younger buyers.  The 'seasoned' buyers and I discussed why they would have assigned projects to employees who had not been with the company but a year or so."

{¶ 26} Nexeo points to Nist's deposition testimony that none of her co-workers voiced any objections regarding their own workloads to her, that management was seeking to equalize the workload within the department, and that when asked about the performance of other employees, Nist testified that it wasn't her business, and she had no idea if any employees were performing poorly.

{¶ 27} None of these deposition statements contradict Nist's affidavit.  Again, it was an abuse of discretion to strike the paragraphs.

{¶ 28} The second assignment of error is well-taken and sustained.

## III. SUMMARY JUDGMENT STANDARD

{¶ 29} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank*

*Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995). Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). When seeking summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the non-moving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 30} In her first assignment of error, Nist argues that it was error for the trial court to grant summary judgment on her claim of age discrimination. Nist contends the trial court construed the facts most strongly in favor of the employer, and that if the facts are construed as they should be when considering a motion for summary judgment, she established a prima facie case of age discrimination, and that a reasonable jury could find that Nexeo's articulated reason for termination was pretextual.

## IV. MOTION FOR SUMMARY JUDGMENT (PRIMA FACIE CASE)

{¶ 31} To prevail in an age discrimination case, a plaintiff must prove discriminatory intent, and may do so through either direct or indirect methods of proof. *Dautartas v. Abbott Laboratories,* 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 25. Here, Nist sought to establish her prima facie case under the indirect method using the evidentiary framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

{¶ 32} Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, paragraph one of the syllabus.

{¶ 33} Nist established the first three prongs of a prima facie case of age discrimination. Nist, age 60 when terminated, was clearly within the protected class. Nist was terminated on November 15, 2012, thus constituting an adverse employment action. Nist had 17 years of experience with Nexeo/Ashland as a purchasing coordinator. Throughout her employment Nist was rated as a valued contributor, including her most recent performance appraisal for the year ending September 30, 2011. Her background, experience, and performance evaluations demonstrated that she was qualified for the position.

{¶ 34} The fourth prong, whether she was replaced by a substantially younger individual, is where difficulties arise with the prima facie case. Nist claims she was replaced by a 25-year-old, Ryan Quinn, or at the very least a genuine issue of material fact exists as to whether she was replaced by Quinn. Nexeo argues that her duties were distributed among her co-workers.

{¶ 35} In order to prove under R.C. 4112.02 that a person of substantially younger age replaced her, a plaintiff must present evidence that another employee actually replaced her by assuming a "substantial portion" of her duties. *Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 25, *appeal not allowed*, 136 Ohio St.

3d 1494, 2013-Ohio-4140, ¶ 25, *reconsideration denied*, 137 Ohio St. 3d 1415, 2013-Ohio-5096, ¶ 25, citing *Mazzitti v. Garden City Group, Inc.*, 10th Dist. No. 06AP-850, 2007-Ohio-3285, ¶ 22. It is well-established that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992).

{¶ 36} In November of 2011, Quinn began applying for jobs at Nexeo, including purchasing jobs, because he had worked as an intern for two summers during college in Nexeo's purchasing department. He was interviewed by Carolyn Harrison in October of 2012 for a purchasing job.

{¶ 37} Also in October of 2012, Nist was told by Joy Caudill that she had satisfied her PIP. However, on November 15, 2012, Nist was terminated.

{¶ 38} Quinn was told that he was to be hired in early November with a start date of November 19, 2012. Quinn was hired as a Procurement Assistant B. Quinn testified at his deposition that he was doing deployment for material. People would buy material from vendors and bring it into Nexeo hubs, and then Quinn would deploy that material across to other Nexeo facilities, figuring out what warehouse to put the material into. He continues to perform that job, but subsequently was given additional purchasing responsibility with vendors Afton Chemical, Polartech, and Pilot. Afton Chemical and Polartech were Nist's largest suppliers. Quinn does not handle bulk shipments, rather drums, totes, cans, or anything not considered bulk. He stated that his work with the three vendors takes up approximately 20-25 percent of his daily duties. Quinn reports to Vince Dent for his work in both purchasing and distribution which is a completely separate department/division than Nist. Dent, in turn reports to Carolyn Harrison.

{¶ 39} Nist reported to Joy Caudill in bulk procurement. Caudill, in turn, reported to Carolyn Harrison. Nist was responsible for purchasing (procuring) chemicals from suppliers, so that those chemicals could be placed in stock, so that they could be transported across the country to various customers. As part of this duty, Nist was required to arrange for pick-up and delivery of chemicals with the common carriers.

{¶ 40} In other words, Nist's primary responsibility was to purchase chemicals in bulk for distribution to Nexeo customers. Quinn was hired to distribute or deploy

material to various facilities.  He has since assumed some purchasing duties (non-bulk) from two of Nist's former large suppliers.

{¶ 41} Quinn works in a different department, he reports to a different supervisor, and he has different duties.  With respect to purchasing from Nist's former major suppliers, Quinn's duties involve package material, not the bulk purchasing that Nist did.  At most, his purchasing duties from three vendors, not just the two Nist handled, make up 20-25 percent of his workday.  Nist also acknowledged that after she left, she was informed that many of her duties were redistributed to other employees.

{¶ 42} Nist has failed to establish the fourth prong of the prima facie case, that she was replaced by a person or persons substantially younger.

{¶ 43} The first assignment of error is overruled.

## V. DISPOSITION

{¶ 44} Based on the foregoing, the first assignment of error is overruled, the second assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN, P.J. and KLATT, J., concur.

————————————————