[Cite as *Toland v. Dept. of Mental Health & Addiction Servs.*, 2020-Ohio-3864.]

| | |
|---|---|
| DORIS TOLAND | Case No. 2018-01352JD |
| Plaintiff | Judge Patrick M. McGrath |
| | Magistrate Gary Peterson |
| v. | |
| | <u>DECISION</u> |
| DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES | |
| Defendant | |

{¶1} On March 18, 2020, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On April 21, 2020, plaintiff filed a memorandum in opposition. Defendant did not file a reply. The motion for summary judgment is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).[1]

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

---

[1]On March 27, 2020, in light of the COVID-19 pandemic, the Supreme Court of Ohio issued an entry tolling the time requirements established by all Supreme Court-promulgated rules. *See 03/27/2020 Administrative Actions*, 2020-Ohio-1166. The order of the Supreme Court provides, in part: "(F) Nothing in this order precludes filings during the duration of the order if the Court, local court, hearing panel, board, commission, or clerk is able to receive filings due to local accommodations and the matter is related to a situation that requires immediate attention." The parties briefed the motion and it is now ripe for a determination.

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶4} Plaintiff brings this action asserting claims of disability discrimination and retaliation in violation of R.C. 4112.02; disability discrimination in violation of 42 U.S.C. § 12101 et seq.; failure to accommodate in violation of 42 U.S.C. § 12101 et seq.; retaliation in violation of the Americans with Disabilities Act of 1990 (ADA); and a violation of the Family and Medical Leave Act of 1993 (FMLA). There is no dispute that plaintiff has worked for defendant at Twin Valley Behavioral Healthcare (TVBH) since 1997 and continues to be so employed. (Toland Depo., pp. 10-12.) For the past 20 years, plaintiff has been employed as the social work director. (Toland Depo. p. 11.) On February 29, 2012, plaintiff was diagnosed with Tibialis Tendinitis and more recently with difficulty walking. (Toland Aff. ¶ 3.) Plaintiff's claims were predicated, in part, upon allegations of discriminatory and retaliatory conduct that occurred prior to October 11, 2016. Defendant previously moved to dismiss as untimely any claims based upon events that occurred prior to October 11, 2016. The court agreed and on April 29, 2019, issued an entry dismissing any claims that arose prior to October 11, 2016.

{¶5} Sometime in the fall of 2015, plaintiff slipped and fell, injuring her ankle and herniating a disc in her back. (Toland Depo. p. 105.) Subsequently, plaintiff used disability leave from January 2016 through March 2016 due to her health condition. (Toland Depo. pp. 98-99.) When plaintiff returned to work in March 2016, she participated in defendant's Transitional Work Program (TWP), which permits employees on disability who are unable to return to full duty to return to work with restrictions for a maximum of 90 days, with the hope of returning to full duty at the end of the program. (McKeen Depo. pp. 13-25.) Plaintiff requested that she be allowed to participate in meetings via teleconferencing; however, plaintiff was not allowed to participate in all meetings via teleconferencing. (McKeen Depo. pp. 35-38.) Because defendant believed plaintiff was not improving physically, as required by the program, plaintiff's

participation in the TWP was terminated on June 9, 2016.  (McKeen Depo. p. 43.)  As a result, plaintiff went on disability leave.  (McKeen Depo. p. 77, Exhibit 13.)

{¶6} On July 29, 2016, defendant issued notice to plaintiff that a disability separation hearing would be held on August 5, 2016.  (McKeen Depo. p. 62.)  The decision was made at the hearing to involuntarily separate plaintiff effective August 19, 2016. (McKeen Depo. pp. 67-72.)  While plaintiff was on disability leave, Kathrine Brown assumed plaintiff's responsibilities as an interim social work director. (Negley Depo. p. 105.) On September 7, 2016, plaintiff was subsequently reinstated into her position as the social work director after submitting paperwork supporting her return to work. (Negley Depo. p. 107, Exhibit 19.)

{¶7} Upon returning to work on September 7, 2016, plaintiff was assigned 12 new job duties.  (Toland Aff. ¶ 10; Depo. pp. 157-158.)  Brown, who worked as the interim social work director, was asked to "reacclimate" plaintiff back to her position once she returned from leave.  (Brown Depo. pp. 29, 49-50.)  Plaintiff's email, time-keeping account, and work cell phone were not immediately reactivated upon plaintiff's return to work.  (Negley Depo. p. 25.)  Brown also occupied plaintiff's office for several weeks until moving into a different office space.  (Brown Depo. p. 46-49.)  While plaintiff was in a commuter office waiting to return to her former office that was occupied by Brown, plaintiff was required to retrieve a key each day to access her office.  (Toland Aff. ¶ 13.)  Plaintiff provides that while she was occupying a temporary office, her arrival and departure times were recorded by Brenda Compton and Suzie Fisher.  (Toland Aff. ¶ 13.)  Plaintiff moved back to her original office on or about September 28, 2016. (Negley Depo. p. Exhibit 20; Brown Depo. pp. 46-49.)  On October 31, 2016, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation, and on November 2, 2016, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC) alleging disability discrimination and retaliation.  (Toland Aff. ¶ 14.)

{¶8} On May 18, 2017, Adam Negley, plaintiff's then-supervisor, issued plaintiff a performance improvement plan (PIP). (Negley Depo. p. 15.) On August 22, 2017, plaintiff successfully completed the PIP with a satisfactory rating. (Negley Depo. pp. 21, 76.) On September 19, 2017, plaintiff was assigned two additional social workers to supervise as their previous supervisor had retired. (Negley Depo. p. 77; Kovach Depo. p 22.) This required plaintiff to walk through the maximum-security courtyard to reach the offices of the newly assigned maximum-security social workers. (Toland Aff. ¶ 31.)

{¶9} On September 29, 2017, Negley issued plaintiff a performance review for October 1, 2016 through September 30, 2017. (Negley Depo. pp. 134-135, Exhibit 30.) Plaintiff was rated as either meets expectations or exceeds expectations in all categories. (Negley Depo. pp. 134-135, Exhibit 30.) Plaintiff believed that critical comments in the review were retaliatory for filing an EEOC complaint. (Negley Depo., Exhibit 30.)

{¶10} On November 27, 2017, Johnna Kovach began working for defendant as plaintiff's direct supervisor, replacing Negley who was promoted. (Kovach Depo. p. 12; Negley Depo. p. 8.) On March 2, 2018, Kovach issued plaintiff what Kovach initially called a PIP, but it was later renamed a performance plan. (Kovach Depo. pp. 119-120; Negley Depo. p. 64.)

{¶11} On March 8, 2018, Kovach denied plaintiff's request to use "comp time" so she could take her personal vehicle to be serviced; Kovach denied the request based on "operational need." (Kovach Depo. pp. 128-130). Kovach added that personal, sick, and potentially vacation time, had it been requested, would have been approved. (Kovach Depo. pp. 128-130.) On April 2, 2018, plaintiff filed a complaint with the Ohio Department of Administrative services alleging retaliation by defendant. (Toland Aff. ¶ 15.)

{¶12} Sometime in May 2018, Kovach reported to defendant's HIPPA privacy officer that plaintiff was taking patient charts from the office to her home. (Kovach

Depo. pp. 188-189.) Kovach also reported this to Negley and Veronica Lofton, the Chief Executive Officer. (Kovach Depo. pp. 188-189.) Plaintiff states that the alleged violation was also reported to the Counselor, Social Worker and Marriage and Family Therapist Board, the social worker licensing board, but there was no finding that plaintiff violated HIPPA based on Kovach's complaint. (Toland Aff. ¶ 17.)

{¶13} On June 8, 2018, Kovach issued plaintiff corrective action for plaintiff's failure to follow a direct order that was previously issued on May 8, 2018. (Kovach Depo. pp. 145-152.) The direct order stated that plaintiff was to attend supervisory meetings; however, plaintiff missed a meeting because of an approved absence from work. (Kovach Depo. pp. 145-152.) Plaintiff did not reschedule the meeting and the corrective action was issued. (Kovach Depo. pp. 145-152.) Plaintiff was subsequently issued a written reprimand for the incident. (Kovach Depo. pp. 157.) A written reprimand is considered official discipline whereas a performance improvement plan is not considered official discipline. (Negley Depo. pp. 147, 160.) Plaintiff believed the written reprimand was unfair. (Kovach Depo. p. 59.) Also, in June 2018, the social work department duties were reorganized, dividing acute care and forensic care. (Kovach Depo. pp. 152-153.) Plaintiff was assigned supervision of acute care patients, increasing her workload. (Plaintiff Aff. ¶ 18.)

{¶14} On July 20, 2018, Kovach denied plaintiff's request to use overtime to complete a project that was due that day. (Kovach Depo. p. 160.) Kovach explained that plaintiff is not an overtime eligible employee. (Kovach Depo. p. 227.)

{¶15} In September 2018, plaintiff commenced disability leave that continued through March 2019. (Toland Depo. p. 98-99.) While on disability leave, plaintiff's office location was moved, which increased the distance she was required to walk from the parking lot. (Kovach Depo. pp. 42-43; Toland Aff. ¶ 19.) In December 2018, Kovach issued plaintiff an annual performance evaluation. (Kovach Depo. pp. 66-67.) In the review, Kovach noted areas that she identified to be plaintiff's deficits, but

nevertheless, rated plaintiff as overall meeting expectations.  (Kovach Depo. pp. 66-67.) Plaintiff considered this evaluation to be her worst evaluation in her career at TVBH. (Toland Aff. ¶ 20.)

{¶16} In July 2019, plaintiff was placed on administrative leave and upon her return to work on July 24, 2019, her email was not activated and remained inactive for approximately one week.  (Kovach Depo. p. 100; Negley Depo. pp. 176-177.)  During plaintiff's employment at TVBH, she has not been demoted, had her salary reduced, or lost any material benefits.  (Toland Depo. pp. 121-130.)  Rather, plaintiff's salary has increased over time.  (Toland Depo. pp. 121-130.)

**Counts 1 and 3: Disability Discrimination**

{¶17} "Under Ohio law, an employer may not discharge without just cause, refuse to hire or otherwise discriminate against an individual with respect to hire, tenure, terms, conditions or privileges of employment 'because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry' of that person."  *Burns v. Ohio State Univ. College of Veterinary Med.*, 10th Dist. Franklin No. 13AP-633, 2014-Ohio-1190, ¶ 6, quoting R.C. 4112.02(A).  The Supreme Court of Ohio has also "determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164 (1991).

{¶18} "'To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent' and may establish such intent through either direct or indirect methods of proof."  *Dautartas v. Abbott Labs.*, 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 25, quoting *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766, 729 N.E.2d 1202 (10th Dist.1998).  Here, plaintiff's theory is that discriminatory intent may be established through the indirect method, which is subject to the burden shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973). *See Nist v. Nexeo Solutions, LLC*, 10th Dist. Franklin No. 14AP-854, 2015-Ohio-3363, ¶ 31.

{¶19} "Under *McDonnell Douglas*, a plaintiff must first present evidence from which a reasonable jury could conclude that there exists a prima facie case of discrimination." *Turner v. Shahed Ents.*, 10th Dist. Franklin No. 10AP-892, 2011-Ohio-4654, ¶ 11-12. "In order to establish a prima facie case, a plaintiff must demonstrate that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the protected class or that the employer treated a similarly situated, non-protected person more favorably." *Nelson v. Univ. of Cincinnati,* 10th Dist. Franklin No. 16AP-224, 2017-Ohio-514, ¶ 33; *Sheridan v. Jackson Twp. Div. of Fire*, 10th Dist. Franklin No. 08AP-771, 2009-Ohio-1267, ¶ 5.

{¶20} "If the plaintiff meets her initial burden, the burden then shifts to the defendant to offer 'evidence of a legitimate, nondiscriminatory reason for' the adverse action. * * * If the defendant meets its burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was actually a pretext for unlawful discrimination." *Turner* at ¶ 14. "The ultimate burden of persuasion always remains with the plaintiff. * * * In order to show pretext, a plaintiff must show both that the reason was false, and that discrimination was the real reason." *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774, 23 N.E.3d 162, ¶ 27 (10th Dist.).

{¶21} Defendant argues that plaintiff cannot establish a prima facie case of disability discrimination because there was no materially adverse employment action. Because defendant's motion does not challenge the other parts of plaintiff's prima facie case, the court will not address them. Adverse employment actions generally entail a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d

789, 798 (6th Cir.2004), quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). "The adverse employment action must materially affect the terms and conditions of employment instead of being a mere inconvenience or alteration of responsibilities." *Turner* at ¶ 17. "Not everything that makes an employee unhappy or resentful is an actionable adverse action." *Canady v. Rekau & Rekau, Inc.*, 10th Dist. Franklin No. 09AP-32, 2009-Ohio-4974, ¶ 25. The employer's action must impact the "terms, conditions, or privileges" of the plaintiff's job in a "real and demonstrable way," and the asserted impact cannot be speculative and must at least have a "tangible adverse effect" on the plaintiff's employment. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir.2001). "The employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239. The limitation is consistent with the basic principle that "Title VII is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Id.* (quoting *Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 587 (11th Cir.2000)).

{¶22} To establish an adverse employment action, plaintiff argues that "defendant's continuous harassment of Toland constitutes an adverse action." (Plaintiff's memorandum in opposition, pg. 15.) However, disability discrimination claims and hostile work environment claims are analytically distinct theories of liability with different elements. *Schramm v. Slater*, 105 Fed.Appx. 34, 40 (6th Cir.2004); *Sessin v. Thistledown Racetrack, LLC*, 187 F.Supp.3d 869, 878 (N.D.Ohio 2016) (Disability discrimination and hostile work environment claims are distinct). Nevertheless, the court will analyze whether the actions taken by defendant constitute an adverse employment action.

{¶23} Plaintiff encourages the court to consider defendant's conduct prior to October 11, 2016, to support her claims in this case under the "continuing violation"

doctrine. *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061 (2002). However, the doctrine is not applicable to discrete acts of discrimination of which the plaintiff was aware at the time they occurred unless the plaintiff presents evidence of a long-standing policy of discrimination. *Chapa v. Genpak, LLC*, 10th Dist. Franklin No. 12AP-466, 2014-Ohio-897, ¶ 99-100; *Bowerman v. Intl. Union*, 646 F.3d 360, 366 (6th Cir.2011). Plaintiff presented no evidence of a long-standing policy of discrimination and there is no doubt she was aware of the alleged discriminatory acts at the time they occurred.[2] Regardless, even considering the actions taken by defendant prior to October 11, 2016, plaintiff cannot point to an adverse employment action taken by defendant.

{¶24} Plaintiff points to several actions taken by defendant to support her claim that she suffered an adverse employment action. Those actions include a written reprimand, corrective action, and a direct order all arising out of an incident where plaintiff failed to reschedule a meeting; a performance improvement plan, which plaintiff successfully completed; a performance plan; increased job responsibilities; denial of use of overtime and comp time; annual performance reviews deemed to be unfair; a HIPPA complaint regarding plaintiff taking client files home; and relocation of her office space. (Plaintiff's memorandum in opposition, pp. 15-17.) However, it is undisputed that plaintiff did not suffer a reduction in pay, a demotion, or lose any material benefits as a result of the actions taken by defendant. Rather, during this period, plaintiff's rate of pay increased.

{¶25} Furthermore, "[a] written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the

---

[2]Even considering defendant's actions prior to October 11, 2016, the actions do not constitute an adverse employment action as explained below. Plaintiff also points to actions taken by defendant that occurred in 2019, which is after plaintiff filed her amended complaint. Plaintiff did not move to supplement her complaint pursuant to Civ.R. 15(E). Regardless, those actions also do not constitute adverse employment actions.

like, is not a materially adverse employment action." *Creggett v. Jefferson Cty. Bd. of Edn.*, 491 Fed. Appx. 561, 566 (6th Cir.2012). Placing plaintiff on a performance improvement plan or a performance plan are not adverse employment actions. *Haynes v. Level 3 Communs., LLC*, 456 F.3d 1215, 1224 (10th Cir.2006) (noting that "[m]ost courts that have considered whether a PIP, standing alone, is an adverse employment action have found it is not."); *Brown v. Sybase, Inc.*, 287 F. Supp. 2d 1330, 1342 (S.D. Fla. 2003) (finding that placement on a performance plan did not constitute an adverse employment action). A threat of discharge alone is not an adverse employment action. *Plautz v. Potter*, 156 Fed. Appx. 812, 817 (6th Cir.2005); *Thomas v. Potter*, 93 Fed. Appx. 686, 688 (6th Cir.2004). "[E]mployer investigations into suspected wrongdoing by employees, standing alone, generally do not constitute adverse employment actions." *Arnold v. Columbus*, 515 Fed. Appx. 524, 531 (6th Cir.2013). An alteration in work responsibilities does not amount to adverse employment action when unaccompanied by tangible harm. *Davis* at 1244-45. Denying a request for leave time does not constitute a material change in benefits. *Blashak v. Ohio Dept. of Youth Servs.*, Ct. of Cl. No. 2017-00695JD, 2019-Ohio-509, ¶ 17.

{¶26} Plaintiff argues in her memorandum in opposition that defendant attempted to involuntarily disability separate her on three occasions: in 2016 and two times in 2019. The Ohio Department of Administrative Services promulgated Ohio Admin.Code 123:1-30-01, et seq., under which defendant, upon giving an employee notice and an opportunity to be heard, may order an involuntary disability separation when an employee is unable to perform his or her essential job duties due to a disabling illness, injury or condition. Even if an employee is involuntarily separated, Ohio Admin.Code 123:1-30-01 includes provisions for reinstatement. It is difficult to view a separation hearing or a separation as a discharge arising to the level of an adverse employment action given the right to reinstatement, which plaintiff exercised in 2016. *See Blashak* at ¶ 15, citing *Plautz v. Potter*, 156 Fed. Appx. 812, 817 (6th Cir.2005); *Thomas v. Potter*,

93 Fed. Appx. 686, 688 (6th Cir.2004). Indeed, plaintiff continues to be employed by defendant.

{¶27} In short, there is no evidence that plaintiff's employment terms, conditions, or privileges were altered in any significant or meaningful way. Accordingly, plaintiff has failed to establish that she suffered an adverse employment action. Thus, construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that she has failed to state a prima facie claim for disability discrimination.

**Counts 2, 5, and 6: Retaliation**

{¶28} "[A] plaintiff bears the initial burden of establishing a prima facie case of retaliation. Specifically, the plaintiff must establish that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Veal v. Upreach LLC,* 10th Dist. Franklin No. 11AP-192, 2011-Ohio-5406, ¶ 16. "Plaintiff's burden of establishing a materially adverse employment action is 'less onerous in the retaliation context than in the anti-discrimination context.'" *Laster v. Kalamazoo*, 746 F.3d 714, 731 (6th Cir.2014), quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-596 (6th Cir.2007). In contrast to a discrimination claim, "the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir.2008), citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2412-14, 165 L.Ed.2d 345 (2006). "The retaliation provision instead protects employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.*, quoting *Burlington* at 2415.

{¶29} Defendant argues, as it did above, that plaintiff cannot support her claim with an adverse employment action. Defendant also argues that plaintiff cannot

demonstrate a causal connection between any alleged adverse employment actions and her filing of the EEOC charge. Plaintiff points to the same actions taken by defendant outlined above to support a claim that she suffered an adverse employment action for her claims for retaliation. However, plaintiff's claims again fail. Many of the alleged retaliatory adverse actions occurred prior to October 11, 2016.[3] The actions that defendant took after October 11, 2016, which plaintiff believes amount to an adverse employment action include two performance evaluations, an alleged HIPPA violation, a written reprimand, a direct order, corrective action, denial of use of overtime and comp time, job responsibility changes, and office relocation.[4] Regarding the annual performance evaluations, as stated previously, there is no dispute that plaintiff was overall rated as meets expectations. It cannot be said that a reasonable employee would be dissuaded from making a charge of discrimination based upon the annual performance reviews.

{¶30} The direct order, corrective action, and written reprimand all occurred because plaintiff did not reschedule a meeting that was to occur while she was on approved leave. No further discipline resulted from this, and this was the lone instance of formal discipline rather than a longstanding pattern of formal discipline. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir.2013); *McDaniel v. Ohio Dept. of Rehab. & Corr.*, S.D.Ohio No. 2:14-CV-0122, 2015 U.S. Dist. LEXIS 162974 (Dec. 4, 2015). This lone instance would not have dissuaded a reasonable employee from making a charge of discrimination.

{¶31} Plaintiff is not overtime eligible and although her request for comp time was refused, she could have requested and received personal time but chose not to do so. (Kovach Depo. pp. 225-226). Plaintiff was not disciplined for an alleged HIPPA

---

[3]As stated above, the actions taken by defendant prior to October 11, 2016, likewise do not constitute an adverse employment action.

[4]As stated above, plaintiff did not move to supplement her complaint with allegations of actions taken by defendant during 2019.

violation, although there is no dispute that plaintiff took patient files home with her, and no HIPPA violation was found. *Ellis v. Shelby Cty. Land Bank Dept.*, 6th Cir. No. 12-6312, 2013 U.S. App. LEXIS 22306 (Oct. 31, 2013) ("An investigation by itself, as opposed to the results of an investigation, does not sound like an adverse employment action."). Likewise, it cannot be said that increased job duties or relocated office locations would dissuade a reasonable employee from making a charge of discrimination. *White*, 364 F.3d at 797 (alteration of job responsibilities is not sufficient to constitute an adverse action). In short, it cannot be said that the actions by defendant would dissuade a reasonable worker from making and supporting a charge of discrimination. Thus, construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that she has failed to state a prima facie claim for retaliation.

**Count 4: Disability Discrimination—Failure to Accommodate**

{¶32} To establish a prima facie case of failure to accommodate an employee must show that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified for the position, such that she can perform the essential functions of the job with or without a reasonable accommodation; (3) the employer knew or had reason to know of her disability; (4) the employee requested an accommodation; and (5) the employer failed to provide a reasonable accommodation thereafter. *Johnson v. Cleveland City Sch. Dist.*, 443 F. Appx. 974, 982-83 (6th Cir. 2011). Once an employee establishes a prima facie case, "the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.*, at 983.

{¶33} Plaintiff's failure to accommodate claim is based upon events that occurred in June 2016. Specifically, while plaintiff was participating in the transitional work program, she requested an accommodation whereby she could attend meetings through conference calling or other electronic means. (McKeen Depo. pp. 34-40.) The request was not considered and plaintiff's participation in the program was terminated;

plaintiff subsequently went on disability leave.  (McKeen Depo. pp. 34-40; Toland Aff. 8.)  However, such a claim is barred by the statute of limitations.  Plaintiff initiated this lawsuit on October 11, 2018, and plaintiff filed an amended complaint on December 3, 2018.  Because plaintiff requested an accommodation in June 2016, and that request for accommodation was effectively denied at that time as she was placed on disability leave rather than accommodated, such a claim is barred by the statute of limitations.

{¶34} Plaintiff states that a request for accommodation was denied in June 2019. (Toland Aff. 28, Exhibit 1(I).)  However, plaintiff filed this complaint on October 11, 2018 and supplemented the allegations in the complaint with an amended complaint filed on December 3, 2018.  Plaintiff never moved to supplement her complaint pursuant to Civ.R. 15(E) to include the denial of her request for accommodation in June 2019. (Toland Depo. pp. 67-73, 83-91, 168.)  Accordingly, such a claim is not properly before the court.

{¶35} Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.


PATRICK M. MCGRATH
Judge

[Cite as *Toland v. Dept. of Mental Health & Addiction Servs.*, 2020-Ohio-3864.]

| | |
|---|---|
| DORIS TOLAND | Case No. 2018-01352JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Gary Peterson |
| v. | <u>JUDGMENT ENTRY</u> |
| DEPARTMENT OF MENTAL HEALTH<br>AND ADDICTION SERVICES | |
| Defendant | |

{¶36} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. As a result, defendant's motion for summary judgment is GRANTED and judgment is hereby rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

**Filed June 17, 2020**
**Sent to S.C. Reporter 7/28/20**